## Trapnall, ex'r, etc., vs. Hill et al.

1. **Tenants in Common:** *Ejectment.*

Where one tenant in common ousts another, or does some act amounting to a total denial of his rights as co-tenant, the latter may maintain ejectment; and, under the statute, may recover his proportion of the rents and profits in the action.

2. **———:** *Account; Chancery Jurisdiction.*

In most matters of account, courts of equity exercise concurrent jurisdiction with courts of law. Upon a complaint in equity, by a tenant in common, alleging an ouster by his co-tenant, and praying an account of the rents and profits received by him, and possession of his share of the premises, the court will entertain jurisdiction.

3.  ACCOUNT: *Pleading, etc.*

    To constitute an account cognizable in equity, there must be mutual items, creating a running account, or such complications as distinguish the transaction from a debt on one side, and a set-off on the other; and the complaint should show the particular character of the accounts, or the circumstances creating the necessity for equitable interposition.

4.  DEMURRER:

    A demurrer to a complaint in equity, which is not filed in apt time, and not submitted until the cause is ready for a final decree, will not be considered, if the pleading and evidence in the entire cause show a case for equitable relief.

5.  ANSWER:

    The answer must contain a denial of each allegation the defendant intends to controvert, or that he has any knowledge or information thereof, sufficient to form a belief. Every material allegation not thus specifically controverted will be taken as true.

6.  CROSS-COMPLAINT:

    A cross-complaint must relate to the matters embraced in the original complaint. Where it is filed as a mode of defense to the original complaint, it requires no equity to support it, but where it seeks affirmative relief, it must be based on matters of equitable cognizance.

7.  ————:

    A cross-complaint against a co-defendant, which seeks relief by way of damages for a breach of covenant, and presents no grounds of equitable cognizance will not be entertained.

APPEAL from *Pulaski* Chancery Court.

Hon. W. I. WARWICK, Chancellor.

*Clark & Williams*, for appellant.

*Gallagher & Newton* and *Rose*, contra.

PINDALL, SP. J.:

The appellees, as heirs at law of John W. Cocke, deceased, filed their complaint in the Pulaski Chancery Court, 8th November, 1869, against Benjamin C. Trapnall and Joseph C. Schader, wherein they charge that on and prior to the 1st day of January, 1860, their ancestor, said John W. Cocke, and the late Frederick W. Trapnall, were seized in fee as tenants in common of some improved real estate in the city of Little Rock.

That, upon the death of said John W. Cocke, the title to the one undivided half of said property descended to and vested in them. That said Trapnall afterwards died, and the defendant, Benjamin C. Trapnall, as the heir at law of said Frederick, on the 1st day of January, 1864, unlawfully took possession of the whole of said property, collected the rents and profits thereof, and on the 1st day of May, 1864, wrongfully sold and conveyed the whole thereof to the defendant, Schader. That the said Schader thereupon entered and took possession of the whole thereof, and continued to hold and occupy the same, hitherto, and still retains it, and refused to account to them for their half of the rents and profits thereof.

That complainants had sued Schader, in ejectment, for the possession of their half of said property in the law court, which cause was still pending. They were advised it was doubtful whether they could recover anything more than the naked possession, without obtaining any account for their share of the rents or profits, either as against said Schader or Trapnall, and that their remedy at law was incomplete.

They pray an account may be taken of the amount due them by said Trapnall and said Schader, respectively, and that they be directed to pay the same over to the proper parties, for the possession of their half of the premises, and their costs, and for general relief.

The defendants were both personally summoned to answer:

On the 9th April, 1870, Schader filed his separate answer. He expressly admits some of the allegations in the bill to be true, and as to some of the most material, as, for instance, the title and seizin of Cocke, the heirship of the complainants, etc., he pleads that he does not know the facts as alleged to be true, and, therefore, does not admit them to be true, and asks that complainants may be required to prove the truth of these allegations; and further answering, he proceeds to set up his purchase

from Ben. C. Trapnall, acting for himself, as well as under power of attorney from his brothers George and William V. Trapnall, the last two being non-residents of the State, who, as the sole heirs of Frederick W. Trapnall, were in possession of the premises, and claimed title to the whole thereof; that he paid them therefor the sum of $900 in gold, which, he alleged at the time, was of the value of 173 cents to the dollar in currency; $400 in silver, of the value of 155 cents to the dollar, and $1,390 in currency, and received from said Trapnall, acting as aforesaid, a deed to the whole of said property, with covenants of general warranty, and also a special covenant, stating that it was the intention of said deed to vest in said Schader a good and perfect title; and obligating said grantors, if said deed shall fail of that effect, to make, or procure to be made, such further assurances as were necessary for that purpose, or, in default thereof, to reimburse him for all losses and damages he should sustain by reason of their failure to do so; further answering, he proceeds to describe the condition of the improvements on the property when he purchased it; states he made considerable repairs on the building then standing, which he describes, and that he erected new store houses thereon, of a valuable and permanent character, which he also describes; that he paid the taxes for a number of years; states the amount, also; states the amount of rent he had received for the several years he had possession; he accompanies his answer with itemized statements, consisting of long accounts for cash paid for labor, lumber, material, and for expenses used in building; also statement of amount of rents received during the different years; in short, he presents accounts which were, to some extent, mutual, apparently complicated, and forming a connected transaction running through several years.

Further answering, he admitted he had been sued in ejectment for the undivided half interest in said property claimed by complainants; that he immediately gave notice to said Benjamin C.

Trapnall, the only one of the grantors residing in the State, and required him to defend the same; that Trapnall had entered his appearance, and filed a plea in bar of that action, and that he himself had filed a plea in bar of said suit, and that the same was then pending in said Circuit Court. Upon advice, he admits that the rights of all parties can be better determined in a Chancery Court than by said action at law.

He then proceeds to plead the statute of limitations to complainants' claim, and insists that it is stale. He submits, that if complainants recover against him the one half of said property, he should, under the covenants in his deed, and to avoid circuity of action, recover, over against Trapnall, the value of such part and of all rents for which he is compelled to account to complainants.

He makes his answer a cross-bill against complainants and the Trapnalls, and requires them to answer the allegations, and in the event of a recovery against him in this suit, he prays a decree over against Ben. C. and George Trapnall for the full amount of such recovery—William V. Trapnall having died since his purchase.

Complainants answered this cross-bill on 8th March, 1871. They deny that the possession of said Frederick W. Trapnall was ever hostile to their title, or that there was ever such an adverse holding by any one as would start the statute of limitation, they join in the prayer for an account, and proffer to perform whatever decree may be rendered consistent with equity.

On 20th October, 1871, the defendant Ben. C. Trapnall filed his demurrer to the original bill, which seems to have slumbered until the 22d December, 1873, when it was taken up, argued, submitted to the court, and by the court overruled.

He seems never to have plead to the cross bill or noticed the same in any manner whatever.

Upon the coming in of the answer and cross bill of Schader, and, before the demurrer of Trapnall was filed, the cause was referred to a master, and with whom a special commissioner was associated, to take an account of the cost and value of the repairs, the cost and value of the permanent improvements, the amount of taxes paid by Schader, whether the property could be so partitioned as to allot the improvements to Schader, the value and amount of one-half of the purchase money, and interest paid by Schader, an estimate of the entire loss to Schader, including attorney's fees in the event he should lose one-half the property, the amount and value of the rents and profits since Schader purchased it, and also to take proof, etc.

They took testimony, and stated an account, and on the 15th of March, 1873, their report was filed, the matter was subsequently re-referred to the master and commissioner, to ascertain the then present value of the permanent improvements, also the difference between the value of currency, and of gold, and silver, at the time of Schader's purchase; their second report was filed November 18th, 1873.

The defendant, Ben. C. Trapnall, on the 9th December, 1873, filed exceptions to the report of the master and special commissioner, upon two grounds:

*First*—Because the report estimated the value in legal tender currency, of the gold and silver coin he had received from Schader, and he insisted he had, by the law of Congress, the right to pay in legal tender currency, all debts he had not agreed to pay in coin, and all debts he had agreed to pay in coin he could pay in kind.

*Second*—He excepted to an allowance to Schader of $500 for counsel fees in estimating the losses he had sustained in defending the action at law and this suit.

On the 28th May, 1873, Probst & Hilb filed their petition in the cause, showing that on the 17th February, 1872, they purchased from said Schader his entire interest in the property, were entitled to become subrogated to his rights, adopted his pleadings and proceedings, and were, according to their prayer, made parties to this suit in his place and stead.

The final decree was rendered 11th December, 1873. The court found that Schader acquired no greater interest in said property than the one-half thereof by his purchase from Trapnall, and that the complainants in original cause were entitled to one-half of the rents and profits of said property from the time said Schader went into the possession, after deducting the amount of taxes and insurance paid thereon, and the value of the permanent improvements made by said Schader, and the interest on the cost thereof.

And said Probst & Hilb then offering to pay said one-half of said rents, and one-half of the original purchase money paid by Schader to Trapnall, to said heirs of said John W. Cocke, and receive an unencumbered title to the whole of said property, and said heirs assenting thereto—it was decreed that said Probst & Hilb pay to said heirs of Cocke, $450 in gold, $200 in silver, and $695 in legal currency, being the one-half of said original purchase money, and the further sum of $2,658.50, being the one-half of the rents due to said heirs, as above stated.

The court, in said decree, then made provision for the security and interest on said several sums until paid, and further decreed that upon full payment the title to said property should vest in said Probst & Hilb, subject only to the lien for those sums.

It was further decreed that said Benjamin C. Trapnall pay unto said Probst & Hilb, $450 in gold, $200 in silver, $1,468.37 in legal tender currency, being one-half of the purchase money received by him from Schader, and the interest thereon, and the

further sum of $250 attorney's fees paid by said Schader in this litigation, and that Trapnall pay all the costs.

After the above decree was rendered the defendant, Ben. C. Trapnall, died, and the present appellant, George Trapnall, qualified as his executor, lodged a transcript in this court, and obtained an appeal from said decree, and now insists as cause of reversal:

*First*—That the court erred in overruling the demurrer filed by his testator to the original complaint, and in taking jurisdiction of the cause.

*Second*—In rendering a judgment in favor of the original complainants on the facts.

*Third*—Both as to the law and the facts, in taking jurisdiction of the case on the cross bill of Schader, and in rendering a decree against Trapnall.

*Fourth*—Investing title in Probst & Hilb, reserving a lien and ordering sale.

The demurrer which was overruled by the chancellor, was:

*First*—To the jurisdiction of the Chancery Court.

*Second*—To the sufficiency of the complaint.

*First*—It was insisted that complainant's remedy was complete at law. That it was shown that they already had an action of ejectment pending, and they could have recovered their rents in that action, and, therefore, this court had no jurisdiction of the matter.

While it is true that they could have maintained ejectment for their undivided half of the premises, and under our statute it would have been competent for the law court to give judgment for the value of the mesne profits, in the way of damages, (Gantt's Digest, 2260), and might have had a writ of enquiry to assess the same (Digest, 2262), they would have to prove, on the trial, that the defendant actually ousted them, or had done some

act amounting to a total denial of their rights as co-tenants (ib., 2259), and would have had to prove the amount of rents and profits, as they best could, at a *nisi prius* trial, and afterwards be driven to some equitable or statutory proceeding to obtain partition, and possession of their part in severalty, and, in case the premises were not susceptible of division, could have had no sale in that proceeding, while the mode of proceeding in the equity courts, was much more adequate than any relief they could obtain at law.

The principal object of this complaint was to obtain an account, and recovery of the mesne profits, and the prayer for possession of their undivided half interest was only ancillary to this purpose.

And for the purpose of taking an account, equity courts exercise concurrent jurisdiction with the law courts in most matters.

"The answer to this ground of demurrer is, that, although the plaintiff might have an action at law, he cannot have as complete relief there as in this court." *Jones* v. *Bullock*, 2 Dev. Eq. Rt., 370. "There is a great variety of cases where courts of equity have concurrent jurisdiction with courts of law, and such is the case in all matters of accounts." *Hawley* v. *Cramer*, 4 Cowen, 727.

"The full concurrence of jurisdiction by courts of equity for relief in all matters of account, whether there be a remedy at law or not, seems to have been largely insisted upon by Lord Erskine in the *Corporation of Carlisle* v. *Wilson*, 13 Vez., Summer's note to the case. 'There is no doubt the remedy in equity is generally more complete and adequate.'

"It is no objection that the party has a remedy at law, unless it be shown that the legal remedy is plain, direct and complete." *Witter* v. *Arnett*, 8 Ark., 60; see, also, 1 Story Equity Ju., 457; Adams' Equity, 431n., and cases cited.

*Vol. xxxi.—23.*

"Under this head (account) the jurisdiction of courts of equity, in regard to rents and profits, may by considered. A great variety of cases of this sort resolve themselves into matters of account, not only where they arise from priority of contract, but also when they arise from adverse claims. 1 Story Eq. Ju., 508 ; and when resorted to for the purpose of an account for mesne profits, will, in many cases, decree it, when the party has not established his right at law." Ib., 509.

In the case of *Nelson* v. *Allen & Harris*, 1 Yerger, 360, the Tennessee court claimed that equity courts had concurrent jurisdiction with courts of law, in cases of account; and, in this case, Nelson, having recovered his ejectment at law, brought a bill in equity for an account of mesne profits; and in the case of *Post* v. *Kimberly*, 9 Johns, 493, it was held that, even admitting that the remedy was complete at law, that in matters of account, chancery courts exercised a very broad jurisdiction ; their course of proceeding was considered peculiarly well calculated for the settlement of accounts, if they are in any degree long and complicated. The objection to the jurisdiction ought not to be favorably received in the later stages of a cause. "Pleas to the jurisdiction of a court ought to be interposed at the earliest opportunity. The party ought not to be suffered to wade through a tedious and expensive law suit, and at the last stages of the cause an objection to be made to the jurisdiction of the court."

In reference to these decisions, it is well to bear in mind that a single transaction will not amount to an account; the items must be mutual, the account a running one, or present some complications to distinguish it from a debt on one side, and a set-off on the other.

In the case at bar, the accounts run through several years; they rested more particularly within the knowledge of the defendants; they were minute to a certain extent, consisting of

rents collected monthly, in varying amounts, and the defendant's, accounts, also, which were very minute and complicated, consisting, in part, of expenses paid for temporary repairs, and in part for permanent improvements; the varying price of labor, cost of material, and fluctuating value of money, all had to be considered, and entered into the adjustment; numerous reasons existed why they could better be settled by the machinery of an equity court than by a jury. The incompetency of ordinary juries to calculate these charges, and to discriminate in the items, their habit of averaging things, and to jump at conclusions, and the difficulty of correcting their mistakes, are within the observation of most lawyers.

The second ground of demurrer, was that the complaint did not state facts sufficient to constitute a cause of action.

The particular character of the accounts was not stated in the complaint. They were not shown to be mutual or difficult; the circumstances which subsequently appeared, and constituted the equitable jurisdiction, were not averred in the complaint.

The pleader should have shown the facts and circumstances constituting the difficulty, or inadequacy of legal relief, and the equitable jurisdiction, by particular statement, as well as by direct averment. And if the objection had been taken in apt time, the demurrer, upon this clause, should have been sustained, with leave to amend.

We must, however, look at the question in the light of the case when the demurrer was presented. It was not filed until after the answer of Schader was in, and the accounts exhibited. It was not submitted to the court until the last stages of an expensive suit, and the cause ready for a final decree. Then the case did present an equitable one, and the complaint shown to contain a good cause of action, defectively stated, for the reasons expressed in *Post* v. *Kimberly,* cited above, and in *Cockrell* v.

*Warner*, 14 Ark., 353.  It should not have been sustained, at that stage of the case.

The demurrer also insists that the object of this suit was to try the title to land, and that the Court of Chancery is not the proper forum to litigate such a question, but the facts do not sustain the assumption.

The complaint alleges that the action at law was pending for that purpose, but that appellants were advised that their remedy for mesne profits was doubtful in that forum; the suit prayed an account of the rents, and for a recovery of the same; this was the principal object; they did pray for the possession of the land, and this upon the ground that equity, having jurisdiction of the case to take the account, could give complete relief; but even if this branch of the prayer had been beyond the power of the court to grant, it would not have affected the jurisdiction on the question of an account.  They alleged their title to the land, as the foundation of their right to rents, and it is material to note, that their title, or right to relief, was not traversed by either defendant, and when the accounts were exhibited, with Schader's answer, they were of such a character that, we think, the case was one complainants had a right to have litigated in an equity court, and the court did not err in overruling the demurrer to the jurisdiction of the court.

Appellant further insists that the court erred in rendering a decree in favor of complainants in original cause on the facts, and insists that there was no evidence that John W. Cocke was ever seized of any interest in these lots, or that complainants are his heirs.

These questions were not put in issue, they were particularly and definitely charged in the original complaint, and never legally traversed.  The law requires the plaintiff to state the facts and circumstances constituting his cause of action, with

intelligent certainty, Gantt's Digest, 4562, but he is not required to produce any proof until the facts alleged are traversed.

Trapnall's demurrer did not traverse them, but it is claimed that Shader's answer did.

He expressly admits many of the facts in the original complaint to be true, and, as to other allegations, those relating to Cocke's seizin, the heirship of these complainants, he answers that he does not know these allegations to be true, and therefore does not admit them to be true, and asks that complainants may be required to make proof thereof.

This is not a sufficient denial to put plaintiffs upon their proof.

The answer must contain a denial of each allegation, the defendant intends to controvert, or that he has any knowledge or information thereof sufficient to form a belief, (Gantt's Digest, 4569), and every material allegation not thus specifically controverted must for the purposes of the suit be taken as true. Ib. 4608; Note E, sec. 125, Myres Ky. Code; *Corben* v. *Cone*, 2 Met., 380; *Bently* v. *Dorcas*, 11 Ohio S., 409; *Bomberger* v. *Turner*, ib., 270; Newman P. and P., 516; 16 Ben. Monroe, 335; 18 ib., 82.

This traverse must be direct, an evasive denial, or one tendering an immaterial issue will be disregarded.

The issue he was required to make was not whether he knew these allegations to be true, or whether he was willing to admit them to be true, but whether they were in fact true; he must deny that the facts alleged in the complaint are true, or if he was without legal information on the subject, he could have traversed them in that form.

It might not have been a very hard matter for defendant to have informed himself whether it was true that John W. Cocke, at the time of his death, was the owner of one-half of the property, he occupied, or whether complainants were his heirs, and if

in truth he possessed no legal information on the subject, he should, on his oath, plead that he had no information thereof sufficient to form a belief, and complainants then would have been placed upon their proof.

We may suppose this rule was enacted to save the expense of litigation over notorious facts, to avoid the expense and delay of proving facts which defendants were not willing to controvert under oath.

From the comparative ease with which the truth of these allegations could have been ascertained from the common notoriety of the facts themselves, and especially from the frank, full and particular manner in which this defendant did plead the real facts he relied upon for his defense, we are inclined to think he did not intend to put these allegations in issue, but be this as it may, he has not done so in the manner required by law, and Trapnall, who now complains of the decree, did not attempt to do so. They stand confessed for the purposes of the suit, and very clearly authorize the relief granted by the decree to complainants in original cause, when taken in connection with the value of the rents and permanent improvements, as discovered by the answer of defendant Schader, and the evidence taken by the master and commissioner. So far as said decree grants to complainants an account of the rents and for the recovery thereof, and establishes their right to one-half of the property, it is abundantly sustained by the pleadings and evidence, and so far as it grants them a decree for the one-half of the purchase money it was entered by consent in truth a contract in open court by parties competent to contract, and of which they do not complain.

The third point made by the appellant is, that the court erred both as to the law and the facts, in taking jurisdiction of Schader's cross bill as against Trapnall, and in rendering a decree thereon.

His attitude towards this branch of the case is very much narrowed here by the important fact that his testator made no objections to the cross bill or the relief prayed thereon in the court below, and we have to consider how far he is bound by the *pro confesso* decree against him.

It would seem from sec. 4567 Gantt's Digest: If no objection which might be made by demurrer is taken to a pleading, either by demurrer or answer, all objections are deemed waived, except only the objection to the jurisdiction of the court over the subject of the action, and that the complaint does not state facts sufficient to constitute a cause of action.

The first ground alone is insisted upon here: Did the court have jurisdiction to decree to Schader the damages he sustained by reason of the breach of warranty in Trapnall's deed, on his cross complaint?

A cross bill is usually brought for one of two purposes: .

*First*—To obtain a necessary discovery of facts in aid of the defense to the original bill, or to bring some matter pertinent to the defense before the court, which could not, under the rules of the court, be presented by answer or plea. In such cases it is a mere mode of defense to the original suit.

*Second*—It may be used to obtain full relief to all parties touching the matters in the original bill. Story's Eq. Pl., 389. For purposes of relief it is most commonly used where persons in opposing interests are co-defendants. Ib., 366.

This court has said: "That against a co-defendant a cross bill is not a defense to the original bill, and thus it loses the most striking characteristic of a cross bill." *Hornor* v. *Hanks*, 22 Ark., 572, " and a cross bill, even by acquiescence of parties, may not have indefinite extent, for the books seem to imply that there is a want of power to make a decree upon matters unconnected with the original suit." Ib., 592.

It should not introduce matters not embraced in the original bill, for as to such matters it is an original bill. Story's Eq. Pl., 401.

When a cross bill is brought against the plaintiff in the original bill as a mode of defense, it requires no equity to support it; in such cases it is treated as an auxilliary bill, for being drawn into the suit by the plaintiff on the original bill, the defendant may avail himself of the assistance of the court, without showing a ground of equity to support its jurisdiction, and may avail himself of any legal defense he may have. Equity will respect legal rights. Story Eq. Pl., 628; Daniel Eq. P. and P., 1549 *n*; *Lambert* v. *Lambert*, 52 Maine, 544.

" But where a cross bill seeks relief, it is indispensable that it should be equitable relief, otherwise it will be demurrable, for to this extent it is not a pure cross bill, but it is in the nature of an original bill, seeking further aid of the court beyond the purposes of defense to the original bill, and under such circumstances it should be such as, in point of jurisdiction, the court is competent to administer." 2 Daniel Ch. P. and P., 1549 *n*; Story Eq. Pl., 398 and 629; Cooper Eq. Pl., 86.

In *Calverly* v. *Williams*, 1 Vez. Jr., 210, one of the leading cases on the subject, the original bill was to procure a conveyance of seven acres of land, which plaintiff averred he had purchased of defendant, with other lands, and that these seven acres were omitted from the conveyance ; the answer denied that the seven acres were included in the purchase, and, by cross bill, alleged that plaintiff had obtained possession under the purchase, and prayed to have the possession restored. Chancellor Thurlow found it was not the intention of the parties to include the seven acres in the purchase, and dismissed the bill. He also dismissed the cross bill, on the ground that defendant's title was a legal one, and the subject of ejectment.

The cross bill must grow out of the matters in the original suit.

The subject matter in plaintiff's original bill was to have an account of the rents of certain real estate, and to recover the possession of one-half of the property.

The subject matter of this cross bill was to recover the damages which one defendant sustained by reason of a breach of covenant, by his co-defendant.

It is not used as a defense to the original bill, for it is no defense to plaintiff's right to the one-half of the rents, and to a partition and recovery of the property, that Schader bought the whole of the property from Trapnall, had a deed with full covenants, which were broken by the existence and prosecution of plaintiff's claim.

This cross bill seeks relief from a co-defendant, and the relief it seeks is purely legal—damages for the breach of covenants—according to the foregoing principles. The court had no power to decree such relief in the absence of any of the special circumstances adverted to in *Hornor* v. *Hanks*, 22 Ark., 591.

It is contended that the decree on the cross complaint may be sustained under our reformed pleadings.

But the adjudications under similar systems in Kentucky do not sustain the position.

If it can be sustained at all, it must be under section 4559, Gantt's Digest, which provides. That a defendant may file a cross complaint against persons other than the plaintiff when such defendant has a cause of action against a co-defendant or a person not a party to the action, and affecting the subject matter of the action.

This section was not originally in the Kentucky Code, and before its adoption the court held: That under the Code of Practice no cross petition by a defendant was allowed. *Saunders*

v. *Saunders*, 17 Ben. Monroe, 13; *Crabtree* v. *Banks*, 1 Metcalf, 484, and of course after the adoption of the Code, and before amendment, which was passed 16th December, 1857, it could not be sustained.

It only now remains to consider the effect of this amendment, which was adopted by our law, as section 108 of the Civil Code.

It has been several times construed by their court. In *Crabtree* v. *Banks, supra*, the judgment creditor of an estate sued the devisees of the deceased, to whom she alleged assets had descended; to recover from them the amount of her judgment, she made the administrator a party defendant, but alleged that he had no assets of the estate to pay her judgment. The administrator made his answer a cross complaint against the devisees, his co-defendants, and prayed for a judgment against them for a balance due to him on his settlement. The judgment creditors and the administrator both recovered judgments against the devisees; on appeal the judgment in favor of the creditor was affirmed, but the judgment in favor of the administrator was reversed. It was held that this section only allowed a cross-petition when the defendant had a cause of action against his co-defendants, affecting the subject matter of the original action.

In *Phillips* v. *Keeper*, 2 Metcalf, 478, in construing this amendment: It was said that the cause of action set forth in the cross petition must be connected with the subject of the original action in the manner contemplated by the statute, for unless such a connection existed, a cross petition could not be maintained, but the party had to resort to a separate and independent action to recover damages for the injury complained of.

In *Wells* v. *Boyd*, 1 Duv., 367, one Preston sued Boyd on a note for $250. The defendant filed an answer against the plaintiff Wells, alleging that the note was executed for the price of a jack, purchased by him of plaintiff, who was a minor, and that

Wells warranted by a covenant in writing that the jack was a good performer, and a sure foal getter, and alleged a breach of the covenant, and claimed damages. It was held that the subject matter of the action, was the right of plaintiff to collect from defendant $250 on the note, and that this right could not be "affected" by any right Boyd had secured to him by reason of Wells' covenant.

*Hill* v. *Golden*, 16 Ben. Monroe, 555, was a partition for dower, by a widow, against a grantee from the husband of the doweress.

The grantee, by way of counter-claim against the widow, administrator and heirs of the grantor, claimed damages for the breach of warranty in his deed, and alleged assets descended.

The Supreme Court of Kentucky sustained a demurrer to the counter-claim, holding that the cause of action, damages for the breach of warranty, was not such a cause of action as is contemplated by the 126th section of the Code of Practice.

Mr. Newman, in his work on Pleading and Practice, page 612, *et seq.*, treats this amendment to their Code (our 4559th section, Gantt's Digest) as embracing, substantially, the same subject matter as was necessary for a cross petition, under the old system, and states that this cross petition, like the old cross bill, must relate exclusively to the subject matter of the original suit, and says there are cases in which cross petitions were sustained under the old practice, which would not, perhaps, now be considered as showing a sufficient connection with the original suit, (page 614,) but thinks it may be assumed, as a general rule, that whatever was a sufficient ground for a cross petition in equity under the former system, is now the subject of an equitable defense. Page 615.

It is material, perhaps, to remark that the cross petition to which he refers, was a statutory regulation, which, the courts

held, was in the room of the old cross bills in equity with all their incidents.

Under the old system, a cross bill was confined to the matters in litigation in the original suit, and when it sought to bring before the court other distinct matters and rights, it was demurrable.   Story Eq. Pl., 631.

And in defining the connection existing between the cross cause and the original cause, by the equity pleader, the words "touching," "related to," "connected with" the subject matter, are used.

In the statute defining cross complaints, the language is, "affecting the subject matter."

We think these terms are all used synonymously, and that this statute must be construed as the old law was, that the difference in the language used does not indicate any change of the law in this respect, and that the subject matter of this cross bill is not so connected with the subject matter of the original cause as to be the proper subject of a cross bill in that cause.

The decree between plaintiffs and the defendant, upon the original bill, is affirmed. The decree against Trapnall is reversed, and the cross bill dismissed, without prejudice to any right of action Schader or his grantees have on the covenants in the deed from Trapnall.

Hon. E. H. English, Chief Justice, did not sit in this cause.