BAGNELL TIE & TIMBER COMPANY v. GOODRICH.

82   547
Case 2
f 83   5

Opinion delivered April 29, 1907.

1.  COURTS—CONCURRENT JURISDICTION IN ACCOUNTS.—Though, in actions involving long and complicated accounts, the remedy in equity is generally more complete and adequate, the jurisdiction of law and equity in such matters is concurrent. (Page 550.)

2.  EVIDENCE—HEARSAY.—It was error to permit a party to prove the contents of a document without showing that the document was lost, or that it was beyond the power of the party to produce it; and when such evidence bore on the pivotal point in the case, its admission was prejudicial. (Page 553.)

3.  APPEAL—HARMLESS ERROR.—It was not prejudicial error to exclude evidence to prove a fact that could have been established by the pleadings. (Page 554.)

4.  STATED ACCOUNT—NECESSITY OF PLEA.—It was not error to refuse to instruct the jury on the question of stated account if no defense of that kind was embraced in the pleadings. (Page 555.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; reversed.

*Stuckey & Stuckey* and *Campbell & Suits,* for appellant.

1. The cause should have been transferred to equity. 8 Ark. 57; 22 Ark. 301; 31 Ark. 345; 48 Ark. 426; 49 Ark. 576; 51 Ark. 201.

2. Appellant's first request for instruction should have been given. "An account rendered, if not objected to within a reasonable time, becomes an account stated, and can not afterwards be impeached by either party except for fraud or mistake." 68 Ark. 534; 41 Ark. 502; 53 Ark. 155; 1 Am. & Eng. Enc. of L. (2 Ed.), 448, Tit. Accounts.

3. The cause should be reversed because of misconduct on the part of the jury, and because the verdict is excessive.

*J. N. Rachels,* for appellee.

1. Appellant's remedy at law was complete, and there was no error in refusing to transfer to equity.

2. Whether or not an account rendered has become a stated account depends upon the circumstances of each case. The burden of proving a stated account rests upon him who pleads it. In this case there is no proof showing the amount of the account, nor that appellee kept it without objection. He had a right to sue appellant, and prove the contract and the amount due under it. 11 R. I. 288; 22 Ill. App. 623; 26 La. Ann. 208; 22 Pa. St. 454; 3 Johns. Ch. 569; 12 Leigh, 173; 25 N. J. Eq. 178.

3. *Ex parte* affidavits by two negro barbers of alleged misconduct on the part of one member of the jury, who was neither talking about the facts of the case nor expressing an opinion, are not sufficient to justify the court in setting aside the verdict. 15 Ark. 403; 35 Ark. 109; 37 Ark. 519; 48 Ark. 396; 70 Ark. 244; 116 Ill. 330; 22 Ind. 165; 85 Ind. 180; 6 Cal. 228; 22 Minn. 305; 3 Brev. (S. C.) 130.

Riddick, J. This is an appeal from a judgment of the circuit court in favor of the plaintiff, George Goodrich, against the Bagnell Tie & Timber Company for $1047.48 for balance alleged to be due by the defendant to the plaintiff for railroad cross-ties sold and delivered by plaintiff to defendant.

The plaintiff in 1899 made a contract with the defendant by which he undertook to have made and delivered to the defendant one hundred thousand or more standard oak cross-ties. For these ties, when delivered on the railroad, the company agreed to pay Goodrich 24 cents for each first-class tie and 9 cents for each cull tie, and one cent for loading each tie into cars for shipment.

Goodrich had a mill at Judsonia, Arkansas, on Little Red River, and his intention was to have the ties made on or near the river above Judsonia, and afterwards to have them floated down the river to that point, where they were to be loaded on cars. To enable Goodrich to carry out his contract, the tie company agreed to advance him 22 cents for each first-class tie delivered on the side track of the railway company and 12 cents for each tie when placed on the river bank. It was further stipulated in the contract that after such advancements had been made on ties, if Goodrich failed to carry out his contract, the company should have the right to take possession of the ties and, after deducting advances and the expenses of getting the ties to the railroad and on cars, should pay any balance due to Goodrich.

Acting under the contract, Goodrich had made at various points along the river some thirty thousand ties, and the defendant from time to time advanced him on these ties various sums of money. Afterwards these ties, or most of them, were delivered to or sold by the tie company, and Goodrich brought this action to recover a balance which he alleged was due from the defendant to him.

The complaint, as first filed, stated that the amount of the balance due was $547.47. By an amendment to the complaint the balance was alleged to be $650.54, and by a still later amendment $1047.48 was alleged to be the corrected balance, and a judgment asked for that amount.

The theory on which the action of plaintiff was based was that after the ties had been made, but before they had been delivered, he and the defendant came to an agreement by which the defendant purchased certain ties from him before they were brought to the railroad and agreed to pay him therefor six-

teen cents each for those ties on the bank of the river and 12 cents for the ties in the woods.

The defendant company admitted that it had made a contract in writing by which plaintiff agreed to sell defendant a large number of ties, for which defendant agreed to pay the prices named in the contract. But it denied that it had made any subsequent contract by which it had purchased the ties in the woods and on the river bank and thus relieved Goodrich of the expense and risk of getting the ties to the railway.

The first question presented by the appeal arises on the motion of the defendant to transfer the action to the chancery court on the ground that the action involved a long and complicated account between the parties. In matters of long and more or less complicated accounts of this kind we have no doubt that equity has jurisdiction, but this does not deprive the law courts of the right to hear and determine such cases, for the jurisdiction of the two courts in such matters is concurrent, and the court which first acquires jurisdiction may as a rule retain it. This court has said that in actions involving long and complicated accounts the remedy in equity is generally more complete and adequate (*Trapnall* v. *Hill,* 31 Ark. 345), and we are inclined to think that the facts in this case could have been better and more conveniently determined before a master or commissioner in chancery than before a jury. But, as the law court had jurisdiction, there was, under the facts of the case, no error in refusing to transfer it to the equity court. 1 Cyc. 418; *Trapnall* v. *Hill,* 31 Ark. 345.

The main question of fact involved in the case was whether the defendant had waived the provisions of the written contract by a subsequent oral contract by which it had purchased from the plaintiff the ties he had on hand in the woods and on the river bank without requiring him to deliver them at the railroad as stipulated in the written contract. If the defendant, after making a written contract in which Goodrich undertook to deliver the ties on the railroad, purchased the ties at a reduced price while they were still on the river bank and in the woods, and took upon itself the expense and risk of floating them down the river to the railroad, then of course it can not

charge Goodrich with the subsequent expense and losses incurred in getting the ties to the railroad. But the defendant denied that it had made any such oral contract, or that it had purchased the ties before they were delivered at the railroad. The burden was on Goodrich to show that the defendant purchased his ties before they were delivered at the railroad, and thus relieved him of his obligation to make the delivery on the railroad. He undertook to show this by his own testimony and by evidence that the company had sent its agent to inspect the ties while they were still on the river bank and in the woods, and that it had made contracts with various parties to raft and float these ties down the river to Judsonia, the point on the railroad from which they were to be shipped, and paid them for doing so, and further that it had sold part of the ties while still on the river bank and in the woods to another tie company.

The president of the company admitted that it had done these acts, but he and the secretary of the company testified that they were done by and with the consent of Goodrich, and in order to assist him in carrying out the contract, and because he did not have the means to carry out the contract without such assistance; that the ties were inspected while still in the woods and on the river bank to ascertain their number and value in order to determine whether it would be safe to make Goodrich further advancements upon them; that, after inspecting the ties, the company declined to make further advancements to Goodrich, and afterwards at his suggestion made contracts with certain parties to raft the ties, it being understood that the expense was ultimately to be charged to him. The force of these acts of the company as evidence tending to show that the written contract had been abrogated is weakened also by the fact that the original contract provides that the company might under certain circumstances take possession of the ties before delivery and proceed to carry out the contract and charge Goodrich with the necessary expenses involved in getting the ties to the railroad.

The company also introduced letters from Goodrich, written after the date on which he claims that defendant had purchased the ties, which seems to be more or less inconsistent

with his contention that the company had already purchased the ties. Goodrich testified that the company purchased the ties in the woods and on the river in October, 1900, and that his connection with them afterwards was only as agent of the company and in assisting it as he had agreed to do. Yet the company produced a letter from him written in December, two months after he says the ties were sold by him, in which he refers to the rafting of these same ties, and says that he has three thousand ties on the yard, and is expecting three thousand more. He then states: "As to pay for the rafting, you will have to do it when you come in, for I am in such hard straits I can't pay anything at present." This letter seems inconsistent with the idea that plaintiff had already delivered the ties to defendant, and was under no obligation to pay for rafting them, for, if he was under no obligation to pay for the rafting, why should he feel called on to explain his reasons for not doing so?

It is also worthy of observation that, although Goodrich relies on this oral contract of sale for a recovery in this case, he nowhere in his testimony makes any very definite statement of the terms of such sale. You have to gather the terms of the contract more by inference than by his direct statements. For instance, after saying that he made arrangements with Bagnell, the president of the company, to send men down to inspect and take up the ties in the woods and on the river, and to ascertain the amount due those who made them, and to pay these parties and charge plaintiff with the sums paid and credit him with the ties, he proceeds to tell what the ties in the woods would amount to at 12 cents per tie, and what those on the river would bring at 16 cents a tie, without ever stating that Bagnell or the company had agreed to pay that price. As his testimony appears in the transcript, he seems to have been interrupted just at that point where he was about to tell the terms of the contract by request from his own counsel to state what the value of the ties would amount to, at the price the company had agreed to pay him for them, and never returned to the subject again during his direct examination. On cross-examination, he was asked again to state the terms of the oral agreement he had made with Bagnell, and he answered the question

as follows: "Our agreement was that they send a man to take up all those ties and rebrand them and all of the indebtedness which was against the ties, to pay all those amounts and charge them up to me and give me credit for the actual amount of money that I had paid out on those ties that his man found I had paid out when they inspected and counted up the ties." This is as near as he gets to stating what the terms of the contract were, except that he does state that Bagnell agreed to allow him 15 cents each for the ties on Big Creek, and the further fact that his counsel in a question propounded to him assumed that he had testified that Bagnell had agreed to pay him 16 cents for the ties on the river and 12 cents for those in the woods, and 15 cents for those on Big Creek, and then asked what the company had done in furtherance of that agreement.

Probably the plaintiff would have testified, had he been asked, that he was to be paid those prices for ties, and we take it that he meant so to state, but this testimony would seem to conflict with his statement on cross-examination that he was to be paid the actual sums he had expended on the ties. In other words, on his direct examination his counsel assumed that he testified that he was to be paid a definite sum per tie; on his cross-examination he states that he was to be paid what he had expended on the ties; while the statements in his letters tend to show that plaintiff was still acting under the original written contract and trying to carry it out some months after the time at which he testified that it had been abrogated.

The evidence of the oral contract by which plaintiff seeks to excuse himself from the performance of a prior written contract is certainly not very convincing, and this state of the evidence makes important the contention of appellant that the court erred in admitting certain testimony bearing on this point. Goodrich, in one of his letters to the defendant company, informed it that he had employed S. E. Austin to pull the ties from the river for 1½ cents per tie, and requests the company to send him certain wages due him. On the trial he introduced Austin as a witness, and Austin testified that he was employed by the Bagnell Company to pull these ties from the river, and that the contract was made by letter. The attorney for the

defendant objected to any statement of the witness as to the contents of the letter. The presiding judge thereupon asked the witness: "Have you the letter?" To which the witness replied, "No, sir." The judge thereupon said, "Well, you can state its contents then." The defendant saved his exceptions to this ruling. The witness did not state where the letter was, or what had become of it. He only said, in reply to the question of the court as to whether he had the letter, that he did not have it. This does not show that the letter was lost, or that it was beyond the power of the plaintiff to produce it. Yet, without any further excuse for not producing the letter, the court permitted the witness to testify that he had written to Myers, the secretary of the company, instructing him to pay him personally for the ties, that Goodrich had nothing to do with them, and that the company agreed to pay him 1½ cents per tie for the work he did. We think that this testimony as to the substance of letters passed between witness and the secretary of the company, none of which was produced or shown to be beyond the power of the witness to produce, was incompetent. It was not only incompetent because the non-production of the letters was not satisfactorily accounted for, but because it embraced a statement that the witness had written Myers that Goodrich had nothing to do with the ties, thus permitting witness to show that his opinion was on that question. This testimony bore on the pivotal point in the case, and was both erroneous and prejudicial. *Wilburn* v. *State,* 60 Ark. 141.

There was nothing prejudicial to defendant in the ruling of the court refusing to permit the defendant to introduce the letters of plaintiff Goodrich to Oliver. These letters showed that Goodrich before the commencement of the action claimed that defendant owed him only about six hundred dollars, whereas he recovered judgment for over a thousand, but these facts were shown by the pleadings, for the judgment was rendered on an amended complaint, and this point could easily have been brought clearly before the jury by cross-examining Goodrich on that point. There was, for that reason, no need to incumber the record by letters to third parties to prove facts that could have been clearly shown in that way. It is true that in these letters Goodrich admits that Oliver will be

entitled to one-half of the amount recovered less the attorney's fees, but this does not show that he was a necessary party to the suit; for he was not a party to the contract with the Bagnell Tie Company on which the action was based, but his interest arose by virtue of a contract with Goodrich by which Goodrich agreed to give him half of the profits he received from the Bagnell contract in consideration for certain services rendered by Oliver.

Neither in our opinion did the court err in refusing to instruct on the question of stated account, for the reason that there was no defense of that kind embraced in the pleadings. *Allen-West Com. Co.* v. *Hudgins,* 74 Ark. 468; 1 C. 193.

For the error indicated the judgment is reversed and the cause remanded for a new trial.