FERGUSON *v.* ROGERS.

Opinion delivered May 14, 1917.

1. ARBITRATION AND AWARD—CONSIDERATION.—W. and R. being in a dispute as to certain timber, and C., W.'s brother, intervened, agreeing to pay R. a certain sum, and to submit the dispute as to certain of the timber to arbitration, C. agreeing to pay the award. *Held,* the change in the status between W. and R. brought about by C. and the transfer of all claims against W. by R. to C. for a sum certain, was ample consideration to support the contract for arbitration and award.

2. ARBITRATION AND AWARD—WITHDRAWAL.—While it is within the power of parties to withdraw from an arbitration agreement at any time before the award, the party withdrawing can not, by such act, escape liability fixed by the terms of the contract, under which he is bound to the other party.

3. EQUITY JURISDICTION—CONTRACTS—LONG ACCOUNTS.—Equity will assume jurisdiction in actions involving long and complicated accounts.

4. EQUITY JURISDICTION—TRUST FUNDS.—Equity will assume jurisdiction of a suit for the discovery and recovery of trust funds.

5. ARBITRATION AND AWARD—EVIDENCE.—The rules of evidence can not be changed by an arbitration agreement so as to bind the courts.

6. EQUITY JURISDICTION—FINDING OF MASTER.—The finding of a master is not binding upon the chancellor.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; modified and affirmed.

*Coleman & Lewis,* for appellant.

1. On the facts the judgment should be reversed.

2. The demurrer should have been sustained. A revocation of an agreement of submission to arbitration may be revoked at any time before the award. 166 Fed. 398; 82 Am. St. 943; 4 Elliott on Contracts, § 2947; 2 R. C. L., § 15, p. 366; 138 Am. St. 637, and note, pp. 640-649;

3 Cyc. 610; 11 Am. Dig. 64-72; 4 Cent. Dig., § 130; 184 Fed. 404.

The effect of the revocation is to restore the parties to their rights as they existed before the agreement. 2 R. C. L., § 18, pp. 370-1; 4 Elliott on Cont., § 2947; 7 Am. St. Rep. 747; 15 L. R. A. 142; 102 Fed. 926.

3. The chancery court had no jurisdiction. The remedy was a suit at law for damages.

*Morris M. & Louis M. Cohn,* for appellee.

1. This was a suit to recover trust funds improperly misappropriated and an account had to be stated. Where a party refuses to submit to arbitration, none is necessary. 94 Ark. 609; 112 Fed. 743; 159 *Id.* 303. It was not necessary to first resort to an arbitrator. 94 Ark. 609, 610. No arbitration was necessary, as the agreement to arbitrate was revoked by the death of John Fletcher. 37 Atl. 574; 181 Pa. 576; 2 Pa. Sup. Ct. 103; 121 Ga. 98, 48 S. E. 696; 24 Pa. St. (12 Harris) 411. The agreement did not provide for the contingency of death of an arbitrator pending submission and for the appointment of a second arbitrator. 108 Pac. 114; 28 L. R. A. (N. S.) 104; 124 Ill. App. 491; 98 Fed. 381; 32 L. R. A. 172; 33 S. W. 1041; 29 N. E. 844; 62 N. W. 422; 101 N. Y. 362; 113 Mo. 606; 97 Md. 294; 102 Mich. 583; 61 N. W. 67.

The suit lay because based on recovery of a trust fund. 70 Ark. 189. Then there was a long and complicated account which gave a court of equity jurisdiction. 82 Ark. 547-550. As arbitration was not possible and complainant was entitled to specific performance, a court of equity was the proper tribunal. 47 L. R. A. (N. S.) 337 to 448, 369, 370, etc. A court of equity has jurisdiction where recourse to arbitration has failed, even though no accounting is asked for. 37 Atl. 304, 20 R. I. 21; 3 Mo. App. 429; 1 Paige 412; 49 Mo. 600; 146 Fed. 8, 76 C. C. A. 516.

2.   Review the evidence and contend that the decree should be for the largest amount found by the master $2,305.48.   The burden was upon appellant to show that the findings of the chancellor were wrong.   24 Ark. 431; 44 *Id.* 216; 89 *Id.* 309; 91 *Id.* 149; 101 *Id.* 368; 103 *Id.* 473.   Where there is a conflict of evidence the findings of the chancellor will not be disturbed.   87 Ark. 593; 98 *Id.* 328; 102 *Id.* 51.   The master's findings are in excess of the findings of the court.   These usually have the force and effect of the verdict of a jury.   85 Ark. 414; 91 *Id.* 292.   The burden of explanation was on defendants.   119 N. C. 13, 25 S. E. 715; 28 So. 349; 97 Pac. 995; 100 *Id.* 977; 85 S. E. 306; 39 Ark. 209; 57 *Id.* 1; 54 *Id.* 227; 45 *Id.* 295.   W. B. and C. E. Ferguson are required to make a strict accounting of all the assets.  97 Ark. 588, 609; 96 *Id.* 281, 299.

HUMPHREYS, J.   Appellee filed a bill against W. B. Ferguson and appellant, C. E. Ferguson, in the Pulaski Chancery Court for a settlement and accounting growing out of the shipment of twenty-eight car loads of lumber, between the 14th day of July, 1909, and the 21st day of February, 1910, from appellee's sawmill at Reader, Arkansas, which shipments were the subject of an arbitration agreement signed by C. E. Ferguson, on the one part, and Geo. W. Rogers, individually, and for the Reader Mill Company and Bank of Commerce, on the other part.

Separate demurrers and answers were filed to the bill by W. B. and C. E. Ferguson.   Both denied all the material allegations in the bill, and C. E. Ferguson pleaded as a separate defense that his responsibility, if any, was founded on the arbitration agreement, which was withdrawn and revoked in advance of the arbitration and award; and that there was no sufficient consideration for the agreement.

By agreement of all parties, the cause was referred to J. S. Maloney as master, to state an account between

the parties upon the depositions and exhibits filed in the case. The master found that appellant was indebted to appellee in the sum of $1,045.70. He arrived at the result by finding that W. B. Ferguson shipped 87,142 feet of lumber, valued at $12 per thousand, from the Reader mill, belonging to appellee, for which Ferguson had not accounted and settled. The master made an alternative finding that if the court should hold appellant and his brother, W. B. Ferguson, to the strict letter of the arbitration agreement and place the burden upon W. B. Ferguson to accurately account for all lumber shipped from said mill, appellant would be indebted to appellee in the sum of $2,305.48. The master arrived at this result on the theory that the evidence was not certain and absolute as to what disposition had been made of 192,123 feet of lumber, valued at $12 per thousand.

The court heard the master's report upon exceptions filed by each party, and upon the whole case decreed in accordance with the first finding of the chancellor, except as to the value per thousand placed upon the lumber by him. The chancellor found that the lumber was of the value of $10 per thousand, instead of $12 per thousand.

An appeal and cross-appeal have been prosecuted from the findings and decree of the chancellor, and the case is before this court for trial de novo.

Appellant insists that there was no consideration for the arbitration agreement, and had there been a consideration, it was his privilege to withdraw from the contract at any time before the award. The undisputed facts are to the effect that W. B. Ferguson was employed by appellee to operate a lumber business which he was conducting in the name of the Reader Mill Company at Reader, Arkansas; that he was employed shortly after the purchase of this business in November, 1908, and remained until the latter part of February, 1910, at which time he was discharged. It was a part of his duty to sell the output of the mill and to render an accounting of the cut and sales to appellee at stated intervals. **Prior to**

his discharge, and thereafter, a controversy arose between W. B. Ferguson and appellee concerning the disposition made by him of lumber during his term of employment. Appellee had instituted attachment and garnishment proceedings, and other suits and prosecutions had been threatened. The Fergusons and their families were much disturbed, and at this juncture C. E. Ferguson stepped into the breach on account of his brotherly affection, and reached an amicable adjustment of the differences existing between W. B. Ferguson and appellee.

As a method of settlement, C. E. Ferguson purchased all claims by appellee against W. B. Ferguson for $2,416.86, except twenty-eight cars of lumber valued at $3,278.44, and as to that claim, entered into a written contract with appellee to ascertain by arbitration and award the liability of W. B. Ferguson to the Reader Mill Company on account of said shipments, and to pay the award as soon as rendered. It was admitted in said contract that twenty-one cars of the lumber had been shipped by W. B. Ferguson from the Reader mill and that said cars contained 246,458 feet of lumber. It was also admitted that appellee claimed the value of seven additional cars but that W. B. Ferguson claimed that these seven additional cars were included in the twenty-one cars he had shipped. It was also admitted that W. B. Ferguson purchased some lumber from the German National Bank for $500, stacked on the yards of Reader Mill Company, after he took charge of the plant under employment from appellee. It was also provided in the arbitration agreement that the burden of proof should rest upon W. B. Ferguson, or the companies claiming by, through or under him or them. It was provided that John Fletcher should act as arbitrator, and in case he should decline or fail to act, that M. J. Ringlehaupt should act and that his award should be final. While the arbitration was pending before John Fletcher, he died, and appellant and his brother declined to submit the

matter to M. J. Ringlehaupt. This suit was then insti-
tuted.

(1-2) The change in the status between appellee
and W. B. Ferguson, brought about by C. E. Ferguson,
and the transfer of all claims against W. B. Ferguson by
appellee to C. E. Ferguson for a sum certain, was ample
consideration to support the contract for arbitration and
award. While it is within the power of parties to with-
draw from an arbitration agreement at any time before
the award, the party withdrawing can not, by such act,
escape liability fixed by the terms of the contract. Our
construction of this contract is that C. E. Ferguson for
a valuable consideration, assumed the obligations of his
brother, W. B. Ferguson, and became jointly liable with
him for all lumber shipped in the twenty-eight cars in
question, and not theretofore accounted for by W. B.
Ferguson to appellee, as trustee for Reader Mill Com-
pany.

(3-4) Appellant contends that if liable, he can only
be held to account in a court of law for breach of con-
tract. Pretermitting a discussion of whether equity has
jurisdiction to specifically enforce a contract of this char-
acter, a court of equity will assume jurisdiction in ac-
tions, such as this, involving long and complicated ac-
counts. The remedy in transactions of this character is
more complete and adequate in courts of chancery than
in courts of law. The record in this case discloses the
necessity for a skillful accountant. This court said in
the case of *Bagnell Tie & Timber Co.* v. *Goodrich,* 82 Ark.
547, ''We are inclined to think that the facts in this case
could have been better and more conveniently determined
before a master or commissioner in chancery than be-
fore a jury.'' In the instant case, we are convinced that
the appointment of a master was a necessity due to the
long and complicated account to be determined. This is
a suit for discovery and recovery of trust funds and
therefore peculiarly an equitable action. Chancery, hav-
ing properly assumed jurisdiction of the action, will de-

termine all issues presented by the pleadings and evidence.

(5) It is insisted by appellant that the rules of evidence can not be changed by arbitration agreement so as to bind the courts. We are inclined to agree with appellant. We do not think the arbitration agreement is binding on C. E. Ferguson in this respect. His case should be tried by the ordinary rules of evidence.

The master found that cars Nos. 27203, 15421, 27482, 101772, 21089 and 39407 had been adjusted and settled in what was denominated by the parties as "The Ten Car Settlement;" that the evidence was insufficient to show that appellee had any lumber in two other cars. This left only twenty cars for adjustment and settlement. This finding of the chancellor was supported by the weight of evidence.

(6) The undisputed facts show that twenty cars contained 236,123 feet of lumber. The master found that the market value of this lumber was $12 per thousand at the time of shipment. The chancellor found that it was worth $10 per thousand. The finding of the master was not binding upon the chancellor, and on appeal the rule is that the findings of chancellors are persuasive and will not be set aside unless clearly contrary to the weight of the evidence. We can not say that the finding of the chancellor in this respect was clearly contrary to the weight of the evidence.

Appellant contends that the lumber shipped in the twenty cars was his private property; that he had purchased the lumber from the German National Bank, along with other lumber, for $500. He had no lumber on the ground save and except lumber he had purchased from the German National Bank. In order to ascertain how much lumber he had, it became necessary for the master to ascertain the amount of lumber sold to him by the German National Bank. This could be ascertained in no other way than by finding the amount of lumber originally owned by the German National Bank and the

amount it had sold and shipped prior to the sale of its
remnant of lumber to W. B. Ferguson. The lumber plant
at Reader was formerly owned by the Phoenix Lumber
Company. On September 8, 1908, the Phoenix Lumber
Company was thrown into bankruptcy and a receiver ap-
pointed to take charge of its assets. An inventory taken
in the bankrupt proceeding on the 8th or 9th of Septem-
ber, 1908, disclosed the fact that the German National
Bank was the owner of 678,846 feet of lumber then
stacked in the yards. After that date, the German Na-
tional Bank sold and shipped 473,865 feet, leaving a bal-
ance on the yard of 204,981 feet. The master and chan-
cellor so found. There was much evidence tending to
show that the German National Bank, after selling and
shipping out 473,865 feet of lumber, only had a remnant
of 100,000 feet left, but the weight of evidence supports
the finding of the master and chancellor that said bank
was the owner of 204,981 feet at the time it sold its rem-
nant to W. B. Ferguson. It is undisputed that W. B.
Ferguson used 56,000 feet of this lumber in constructing
platforms at the plant. He did this, however, without
any specific authority from appellee to do so. He did not
report the matter to appellee until their differences arose.
In the arbitration agreement, all matters of difference
between the parties were adjusted except the differences
existing on account of shipments contained in the twenty-
eight cars, and reserved for future adjustment. By de-
ducting this amount of lumber from 204,981 feet pur-
chased by W. B. Ferguson from the German National
Bank, a balance of 148,981 feet was left on the yard be-
longing to W. B. Ferguson. This is the only lumber he
could have owned and shipped in the twenty cars afore-
said. The cars contained 236,123 feet. If it be true
that W. B. Ferguson had 148,981 feet in them, then appel-
lee must have had the difference between 236,123 feet and
148,981 feet, or 87,142 feet. The master found, and we
presume the chancellor intended to find, that the twenty
cars contained 87,142 feet of lumber for which no account-

ing had been made by W. B. Ferguson to appellee, as trustee for the Reader Mill Company. Adhering to the values placed upon the lumber by the chancellor, a judgment should have been rendered in favor of appellee against appellant for $871.42. Through inadvertence or mistake, judgment was rendered for $770.14.

We think the first finding by the master, as to the amount of lumber unaccounted for by W. B. Ferguson, is supported by clear and convincing evidence. The finding of the chancellor as to the ownership of the lumber in the twenty cars is correct, even tested by the rule of evidence applicable between parties occupying a fiduciary relationship.

The decree will be modified so as to conform to the opinion herein, and, as modified, is affirmed.