CHARLESWORTH v. WHITLOW.

Opinion delivered February 18, 1905.

1. EQUITY—ACCOUNTING.—A complaint asking for an accounting of lumber received by defendants on plaintiffs' account, which alleges that the transactions between plaintiffs and defendants were multifarious and complicated, and that, by mistake, oversight or connivance of a third person and defendants, much of plaintiffs' lumber was credited to the account of such third person, states a case within jurisdiction of equity. (Page 280.)

2. ACCOUNT STATED—WHAT NECESSARY.—In an account stated two things are necessary, viz: (1) that there be a mutual examination of each other's items; (2) that there be a mutual agreement as to the correctness of the allowance or disallowance of the respective claims and of the balance on final adjustment. (Page 281.)

3. GRATUITOUS BAILMENT—LIABILITY.—Evidence that lumber came into the hands of a gratuitous bailee, and that he failed to account for it in any manner, is proof of either gross negligence or fraud; and in either event he will be liable for its value. (Page 282.)

Appeal from Madison Circuit Court in Chancery.

JOHN N. TILLMAN, Judge.

Affirmed.

Whitlow, Lake & Company, a partnership composed of W. H. Whitlow, George T. Lake and W. L. Stuckey, brought suit against Charlesworth & Yount, alleging that prior to December, 1898, plaintiffs operated a sawmill near Pettigrew; that they arranged with Charlesworth & Yount to supply said mill with such goods, merchandise and cash as were needed. to pay the hands for operating same; that said account was run by their agent, Robert Fletcher, who was only authorized to buy such things and get such cash as was needed to supply said business; that defendants furnished plaintiffs a statement of account, purporting to show all items of debits and credits; that many of the items on account rendered were for Robert Fletcher's individual interest, and that defendants knew these facts; that some of the credits on account were for lumber purchased by defendants from plaintiffs; that more lumber was furnished and at higher prices than shown by account; that plaintiffs closed said account December 1, 1898, and contracted said mill to said Fletcher; that at said time there were 60,000 feet of lumber on yard of plaintiffs at Pettigrew; 60,000 feet of lumber on mill yard, and 70,000 feet of logs on mill yard; that defendants were to pay for the cut and haul of said lumber and logs, which lumber was to be delivered on said yard at Pettigrew; that plaintiffs arranged with William Charlesworth, one of the defendants, to represent them at Pettigrew and at the mill, to pay for the cutting and hauling, to purchase certain lumber at price agreed, to sell the balances to make collection from Robert Fletcher and from the firm of Sears & Dennis, and to render an account to plaintiffs; that the compensation for said services was the benefit of the trade so obtained by defendants; that on final accounting defendants failed to account for a large amount of said lumber, and failed to pay over amounts collected by them; that defendants charged plaintiffs with the goods and merchandise wrongfully; that plaintiffs were dealing with Fletcher individually, and that, by mistake, oversight, or fraudulent connivance of Robert Fletcher and defendants, much of plaintiffs' lumber was credited to the individual account of said Fletcher; that the amount in value of the lumber was to plaintiffs unknown, but that they are informed that it would aggregate the sum of $1,500 in excess of amount accounted for; that the transactions between defendants and plaintiffs are multifarious and complicated, and

cannot be reached by law. Prayer for an accounting; that defendants be restrained from bringing any suit at law against plaintiffs, and for other relief.

Defendants' answer denied all the allegations of plaintiffs' complaint except as admitted; admit that they entered into an agreement with plaintiffs by which defendants were to furnish goods, wares, merchandise and money to the account of plaintiffs upon the order of Robert Fletcher; that said Fletcher was the agent and representative of plaintiffs, and that during the life of said agreement they did furnish to said Fletcher, as the agent and representative of plaintiffs, certain goods, wares, merchandise and money. They allege that the account exhibited by them was a full itemized statement of all matters of credit and debit. They deny that they ever at any time charged the said account erroneously; that any portion of said account was the individual account of Fletcher; that they had failed to account fully and properly for all goods, money, lumber or other property coming into their hands as such agents; that they ever failed to render a full, true and itemized account of all transactions; that they were indebted to plaintiffs in any sum whatever. By way of cross complaint, as well as further answer, they allege that they had entered into a contract with plaintiffs; that said Robert Fletcher was to be treated as the agent and representative of plaintiffs, with full power to bind plaintiffs upon all orders given by said Fletcher for plaintiffs; also, that said Fletcher was to act, generally, as representing the interest of the plaintiffs in all respects; that in pursuance of agreement an account was opened in the name of "Whitlow, Lake & Company by Robert Fletcher"; that they honored all orders received from the plaintiffs, whether direct or through their said agent; that upon said account they gave the plaintiffs credit for all lumber, moneys, etc., received by them, whether coming directly from said plaintiffs or from their said agent; that said account is in all respects just, true and correct, that all proper credits have been allowed; that the accounts between defendants and plaintiff are neither complicated nor multifarious, and that they could be fully reached by a suit at law. Prayer for judgment in the sum of $_____and other relief.

At the hearing the court found the issues for the plaintiffs, and that defendants received goods, chattels and timber, the

property of plaintiffs, of the value of $600. The court dismissed the cross-complaint of defendants for want of equity. Defendants have appealed.

The facts sufficiently appear in the opinion.

*E. B. Wall,* for appellant.

Appellees' ignorance of the settlement made could not be excused. 55 Ark. 241; 29 Ark. 131; Mechem, Ag. § 148. And they are bound by them. 1 Am. & Eng. Enc. Law, 437; 11 *Id.* (2d Ed.), 421; 11 Ark. 249; 33 Ark. 465; 49 Ark. 323; 54 Ark. 216. The appellees cannot ratify the acts of Fletcher in part only. 1 Am. & Eng. Enc. Law (2d Ed.), 988; 58 Vt. 561; 73 N. Y. 5; 14 Wis. 553. Fraud must be proved. 11 Ark. 378; 17 Ark. 151; 18 Ark. 124; 31 Ark. 554; 43 Ark. 430; 45 Ark. 492; 38 Ark. 419. An agent ordinarily is only liable for gross neglect or willful and malicious fraud, but not for nonfeasance. 1 Am. & Eng. Enc. Law (2d Ed.), 1070; 11 Wend. 25; 11 Ark. 189; Story, Bail. § 137; 6 Wall. 420.

*W. L. Stuckey* and *Walker & Walker,* for appellees.

Where an agent receives money, in an action to account therefor the burden is upon him to show that he paid it to his principal. 1 Am. & Eng. Enc. Law, 282; 48 Ark. 487; 11 Ark. 189; 28 Ark. 64. The court had jurisdiction. 31 Ark. 345; 1 Story. Eq. § § 441, 457; Adams, Eq. 431; 48 Ark. 435. Unless the chancellor's findings are clearly erroneous, they will be sustained. 31 Ark. 85; 44 Ark. 216; 50 Ark. 185.

WOOD, J. 1. The complaint stated facts sufficient to give the chancery court jurisdiction. The purpose of the complaint was to require appellants to discover and account for lumber, or the proceeds thereof, which appellees alleged appellants had received under a certain contract of agency, the terms of which are set forth in the complaint, and it was alleged that the transactions between appellants and appellees were multifarious and complicated, and could not be reached at law. It was alleged that, "by mistake, oversight or fraudulent connivance" of Robert Fletcher and the defendants, Charlesworth & Yount, much of the lumber belonging to the plaintiffs was credited to the individ-

ual account of the said Robert Fletcher. The complaint alleges that appellees do not know the value of the lumber, but they are informed and charge that appellants received lumber to the value of $1,500 in excess of what they had accounted for. There was a prayer for an accounting. The chancellor was correct in assuming jurisdiction. *Trapnall* v. *Hill*, 31 Ark. 345; Story, Eq. § § 441-443, 457; Adams, Eq. 431; *State* v. *Churchill*, 48 Ark. 435.

2. There is nothing in the evidence to show that appellees are bound by an "account stated." There is proof to justify the conclusion that after the 21st day of December, 1898, appellants knew that Robert Fletcher had ceased to be the agent and representative of appellees at the mill. That after that date he was acting on his own responsibility, and not as the agent of the appellees; that appellees had sold the mill to him, and that certain lumber and logs on the ground at the time of the sale remained the property of appellees. That the logs were to be converted into lumber, and the lumber was to be sent to Pettigrew. That appellees were not to be represented in this winding up of their affairs at the mill by Fletcher, but by some one else. That in this matter the interests of appellees and Fletcher were somewhat antagonistic. Therefore whatever accounts, after December 21, 1898, were rendered to Robert Fletcher were not statements of accounts to appellees, and what Fletcher said or did with reference to these could not bind appellees, unless, with full knowledge of the statements, and of appellants' intention, appellees approved them. But the proof tends to show that appellees, through Stuckey, notified appellants that the account was much larger than was expected, but expressed the probability that when the "lumber and everything came out" the account would be all right.

Two things are necessary, according to the definition of Mr. Anderson, in an account stated: "that there be a mutual examination of each other's items, and that there be a mutual agreement as to the correctness of the allowance and disallowance of the respective claims, and of the balance on final adjustment." Anderson, Law Dict. p. 17.

It is not disputed that Fletcher was the agent of appellees up to the time the mill was sold to him by appellees, about the 8th of December, 1898. It is not contended that appellees would not be bound by monthly statements of account rendered to and approved by him while he was appellees' agent. But the proof

that such agency of Fletcher ceased after the 21st of December, 1898, clearly preponderates any evidence to the contrary. If he acted for appellees at all after that time, it was not with reference to the lumber and logs at the mill reserved to appellees when they sold the mill to Fletcher. Appellees are seeking to recover only for lumber that was received by appellants, as the agents of appellees.

3.   The answer admits, and the proof, by both Stuckey and Charlesworth, shows, that Charlesworth & Yount were the agents of appellees at Pettigrew for the purpose of receiving their lumber, after the sale of the mill to Fletcher. It is not shown conclusively when this agency began, but it was not earlier than the 8th nor later than the 21st of December, 1898. There is some conflict in the evidence as to whether Charlesworth & Yount were to represent appellees at the mill as well as at Pettigrew; but we are of the opinion that the weight of the evidence shows that they were agents only for the lumber that should come into their hands at Pettigrew, and that appellees were represented at the mill by Dennis.

The consideration for the contract, according to the testimony of Stuckey, was the profit which appellants expected to receive from the sale of goods, which they were enabled to make by reason of handling the business of appellees in connection with the winding up of their sawmill and lumber interests at Kingman and Pettigrew. There is no very clear and satisfactory proof of what compensation appellants received or were to receive. But whether appellants were remunerated agents, or merely gratuitous bailees, is not material. For in either case they should be held to discover and account for the lumber which came into their hands, and they would be liable for its value unless they could show that they still had the lumber or could account for its loss. For not to be able to account in some manner for lumber that had come into their hands under the circumstances would be evidence of gross negligence or fraud, and in either event they would be liable for its value, even as gratuitous bailees. 1 Am. & Eng. Enc. Law (2d Ed.), p. 1070; *Beardslee* v. *Richardson,* 11 Wend. (N. Y.), 25; *Gulledge* v. *Howard,* 23 Ark. 61; *Tracy* v. *Wood,* 3 Mason (U. S.), 132.

4.   What is the amount and value of the lumber that was received by appellants of appellees at Pettigrew for which appel-

lants have not accounted? This is purely a question of fact, and its proper solution has been rendered exceedingly difficult because the chancellor neither referred the matter to a master for statement of account, nor favored us with any special findings of his own. We have thus been compelled to go through a voluminous record to ascertain whether the chancellor's general finding is correct. The proof shows that about December 8, 1898, or sometime between that date and the 21st of December, an inventory or estimate was taken of the lumber of appellees at Pettigrew and the lumber and logs at the mill. This estimate is not disputed by either side. It shows the following:

Lumber at Pettigrew.............................64,551 feet
Lumber at the mill..............................43,716 feet
Logs at mill....................................76,000 feet

It was shown that the logs when converted into lumber would make a little more than 76,000 feet. But it is calculated that the logs made 76,000 feet of lumber. There was then at the mill after the logs had been converted into lumber 119,716 feet of lumber. How much of this lumber was hauled to Pettigrew and received by appellants? The exhibit to Charlesworth's deposition, showing the account between Whitlow, Lake & Company and Charlesworth & Yount, reveals that appellees were charged as follows:

1898, December 31, Lumber checks 8,610 feet..........$ 34.44
1898, December 31, Lumber checks 18,837 feet..........  75.34
1899, January 3, Lumber checks 5,000 feet.............  20.00
February 2, Lumber checks 22,976 feet.................  91.00
February 28, Lumber checks 2,026 feet.................   8.10
February 28, Lumber checks 25,991 feet................ 103.96
February 28, Lumber checks 224 feet...................    .89
March 17, Lumber checks 14,001 feet...................  56.00
December 31, 1898, Wagon felloes......................  28.65
February 2, 1899, 142 sets............................  17.75
February 28, 1899, Wagon felloes, 7 sets..............   2.12

The account thus shows that from 31st of December, 1898, appellees are charged with the hauling of 97,665 feet of lumber from the mill to Pettigrew, and also with the hauling of felloes amounting to $48.52 or about 389 sets at 12½ cents per set. It appears then that appellants received 97,665 feet of lumber. The same account shows that after December 8, 1898, they account for the following lumber:

January 1 By lumber statement for December, 1898....$  45.62

January 31, By lumber statement for January, 1899......$ 84.78

March 14, Lumber statement ..................-....... 310.50

March 17, By lumber car 3890 Ayer & Lord Tie Co..... 28.54

March 17, By lumber car 3734 Ayer & Lord Tie Co..... 48.67

March 17, By 40 pcs 2¼x12x14 feet............... 15.75

March 25, By 17 pcs 1 3-5x5x16.................... 2.61

April 1, By 25 pcs 2¾x12x14 and 5 pcs 13¼x12x16.... 14.14

April 7, By lumber statement....................... 97.27

April 14, By lumber car 3807, 1,091 feet.............. 13.97

Total .......................................$661.85

Estimating the lumber at the mill to be worth $12 per thousand feet, which the proof shows it to have been reasonably worth, the $661.85 would represent 55,155 feet of lumber, which appellants account for. The evidence of one Reynolds shows that Ayer & Lord Tie Company received from Pettigrew, after December 8, 1898, 26,543 feet of lumber which went to the account of Whitlow, Lake & Company. This was in addition to the amount shown in the account rendered. The proof shows also that Pitkin & Mayes received from Pettigrew 2,831 feet of lumber, besides the felloes, which should be charged to Whitlow, Lake & Company, and credited to appellants. The proof also shows that the Sligo Iron Store & Wood Company purchased some 10,436 feet of lumber, for which Whitlow, Lake & Company should be charged, and the appellants credited.

The account then should be stated as follows:

Charlesworth & Yount to Whitlow, Lake & Company, Dr.

To amount of lumber estimated at Pettigrew about

December 8, ............................. 64,551 feet

To amount of lumber hauled from mill to Pettigrew

after December 8, ........................ 97,665 feet

Making a total of........................162,216 feet

They should be credited:

By amount shown by account rendered............ 55,155 feet

Amount sold to Pitkin & Hayes................. 2,831 feet

Amount sold to Ayer & Lord Tie Company........ 26,543 feet

Amount sold to Sligo Iron Store & Wood Company ............................... 10,436 feet

Making a total of........................ 94,965 feet

This would leave a balance unaccounted for, that went into the hands of appellants at Pettigrew, of 67,251 feet.

But of this, according to the testimony of Charlesworth, about 8,000 feet would be culls, which, for the purposes of this case, may be considered as worthless. This would leave 59,251 feet in the hands of appellants unaccounted for. This lumber, according to the proof, was reasonably worth $12 per thousand feet. The amount, therefore, which we find was due appellees was $711.01. Appellants in their cross-complaint claimed the sum of $88.26. This amount is disputed by appellees, but, giving appellants credit for the entire amount, they would still be due appellees $622.75. The decree of the lower court was for $600.

Appellants' counsel severely arraigns appellees' counsel for an alleged improper statement of the account in their brief. But, unless we have overlooked some important facts in the record, the statement of the counsel for appellees is substantially correct. Appellants' counsel say that the total haul for December, as indicated by the amount paid ($158.43), including the wagon stuff, was 39,612 feet. But counsel overlook the fact that the "wagon stuff"—felloes—was charged in the account rendered as so much per set. The hauling of the wagon stuff—felloes—was charged in the account, it is true. But there is nothing in the account rendered, or in the record otherwise, to show that these felloes were to be counted as so many feet of lumber. On the contrary, the account rendered shows that appellees were charged with the hauling of lumber from December to March 17, amounting to 97,665 feet, and they are charged with hauling the felloes besides.

Appellants' counsel say that "the statement of Mayes shows that there were two carloads of lumber and felloes; which, of course, was all lumber within the meaning of our account." He further says that the statement of appellees "that there were shipped to Pitkin & Mayes, 2,831 feet of lumber is not only error, but absurd." Appellants' counsel says that the amount should have been pointed to read 28,310 feet instead of 2,831 feet. But in none of these statements, so far as we can ascertain, is appellants' counsel supported by the record. On the contrary, the statement from the account shows, as above stated, that appellees were charged with the hauling of 97,665 feet of lumber, the first item of the charge being December 31, 1898, and the last

March 17, 1899. The lumber haul is charged in the account as lumber, and the charge for haul of felloes, is for "felloes" per set. The testimony of Mayes is exactly as stated by counsel for appellees, to-wit:

"Between December 8, 1898, and April 13, 1899, we received from the Fletcher mill, cars No. 13158 and 7032, car No. 13158 containing 2,831 feet of lumber; the balance was felloes. Car. No. 7032 was loaded entirely with felloes," etc.

Finding no error, the decree is affirmed.