ARKANSAS FERTILIZER COMPANY *v.* BANKS.

Opinion delivered May 9, 1910.

1. INSTRUCTIONS—APPLICABILITY TO ISSUES.—Where the issues in a case were as to whether defendants were liable to plaintiff for the value of fertilizers consigned to defendants by plaintiff to be sold and accounted for, it was error to instruct the jury upon the theory that the fertilizers were sold outright to defendants. (Page 93.)

2. FACTORS AND BROKERS—DUTY OF CONSIGNEE OF GOODS TO SELL FOR PRINCIPAL.—Where goods are consigned to an agent to sell and account for the proceeds to the consignor, it is the duty of the consignee to be reasonably diligent in selling the goods, to exercise reasonable care in selecting responsible purchasers, and to sell same for their fair value or market price upon a reasonable term of credit or for cash, and to exercise reasonable diligence in collecting purchase money when entrusted with the collection, and to promptly account for all money and property which has or may come into his hands by virtue of such agency. (Page 93.)

3. ACCOUNT STATED—APPLICABILITY OF INSTRUCTION.—It was not error to refuse to instruct as to an account stated where no such issue was raised by the pleadings. (Page 93.)

4. SAME—CONCLUSIVENESS.—Where the parties to an open account came to an agreement whereby the debits and credits to which each was entitled were determined, and a balance was ascertained to be due to one of them, and time for payment thereof was extended, such agreement constituted an account stated, which could be impeached only for fraud and mistake. (Page 94.)

Appeal from Sevier Circuit Court; *James S. Steel,* Judge; reversed.

*Collins & Collins* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

An agent must account to his principal for moneys collected, and he cannot defend on the ground of illegality. 48 Ark. 487; 23 Ark. 390. An account stated can only be impeached on the ground of fraud. 13 Ark. 609; 21 Ark. 420; 41 Ark. 502; 47 Ark. 541; 55 Ark. 376; 64 Ark. 39; 68 Ark. 534; 72 Ark. 234; 80 Ark. 438; *Id.* 469.

*Otis T. Wingo,* for appellee.

BATTLE, J.   The Arkansas Fertilizer Company, for cause of action against J. N. Banks and W. C. Brummett, alleges:

"That plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Arkansas, with its principal place of business at Little Rock, Arkansas. That defendants, J. N. Banks and W. C. Brummett, are indebted to plaintiff in the sum of two hundred and fifty dollars and seventy-two cents, with interest from December 1, 1908, at the rate of eight per cent. per annum, as evidenced by a certain promissory note, which in words and figures is as follows, towit:

" '$1,130.50.           De Queen, Ark., May 1st, 1907.

" 'On or before November 1st we promise to pay to the Arkansas Fertilizer Company, or order, eleven hundred thirty and 50-100 dollars, for value received, with interest at the rate of eight per cent. per annum from date until paid, and with current rate of exchange on Little Rock, Arkansas, if paid elsewhere. This promissory note is given in full settlement for fertilizers sold, and payment is secured by farmers' promissory notes as collateral.

" 'Extended to Nov. 1st, 1908.

" '(Signed)          " 'J. N. Banks,
                     " 'W. C. Brummett.'

"Wherefore plaintiff prays that it have judgment against the defendants, J. N. Banks and W. C. Brummett, for and in the sum of two hundred and fifty and 72-100 dollars with interest from the 1st day of December, 1908, at the rate of eight per cent. per annum, and for its costs in and about this cause expended."

Defendants claimed damages for money paid out and for loss of time in handling said fertilizers, which they claimed were worthless.

The issues were tried by a jury. The cause of action was based upon the following contract in writing:

"This contract, made between the Arkansas Fertilizer Company, of Little Rock, Ark., and J. N. Banks and W. C. Brummett of De Queen, State of Arkansas.

"Witnesses, that the Arkansas Fertilizer Company agrees to deliver at the prices and on the terms named herein to the

party above named such quantities of the White Diamond fertilizers as are specified below, to be ordered shipped by consignee, before the expiration of this contract, and authorizes them to sell the above named fertilizers and to be sole agents for their sale in the De Queen vicinity, provided that the Arkansas Fertilizer Company shall not be liable for any damages, commissions, or expenses because of failure to deliver goods promptly, if such delays are on their part unavoidable. And provided further that all goods shipped on this contract and the proceeds from the sale thereof shall remain the property of the Arkansas Fertilizer Company until full cash settlement has been made.

"We, J. N. Banks and W. C. Brummett, accept the above, and agree to act as agents for the sale of Arkansas Fertilizer Company's 'White Diamond' brand of fertilizers, and, in consideration of having the exclusive agency for these fertilizers in the above-described territory, agree to make or have made a thorough canvass of said territory for their sale at the proper time, and agree not to undertake the sale of any other fertilizers in said territory during the period covered by this contract; and further agree to pay freight charges, if unpaid, and if necessary store fertilizers in a dry place until sold or settled for, and not to sell or offer to sell the White Diamond fertilizers in the territory of any other agent for the same brand without such agent's consent.

"Terms and prices per ton of 2,000 pounds on cars in car lots at De Queen, Ark., in 100 pound bags.

"Five tons Ammoniated Bone Superphosphate for sandy soil, net to agent, $20.25; 5 tons 20th Century Fertilizer for clay soil, net to agent, $20.25; Nitrated Superphosphate with potash for vegetables' quick growth, net to agent, $26.25; Potash Special, Raw Bone Meal with potash, Pure Raw Bone Meal; 5 tons Kali Superphosphate for fruit soil to make fruit, net to agent, $17.75; Economy Fertilizer; 5 tons Acid Phosphate to make cotton open early, net to agent, $15.25; Orchard Fertilizer, and as much more as can be sold by us.

"Terms: Settlement for spring shipments due May 1; for all fall shipments due November 1. Settlements to be made in cash, or 8 per cent. interest-bearing notes to cover time sales, secured in every instance by the notes of the farmers to whom

sales are made, indorsed by agent as collateral. All fertilizers sold by agents for cash by settlement date are to be settled for with cash. Unsold fertilizers in agent's possession to be settled for by notes without interest, due at the next settlement date. Eight per cent. per annum allowed on payments made before due. It is mutually agreed that this contract may be cancelled by either party hereto when the other party shall fail to perform their part thereof. This contract not valid until approved by the Little Rock office of the Arkansas Fertilizer Company.

"Signed this the 18th day of December, 1906.

"Arkansas Fertilizer Company.
"J. N. Banks,
"W. C. Brummett.

"Accepted December 24, 1906,
"By Arkansas Fertilizer Company.
"Wm. S."

In pursuance of the foregoing contract the plaintiff shipped and delivered to the defendants three carloads of fertilizers to sell for it as agents. On the first day of May, 1907, defendants executed to plaintiff the note sued on, on which are indorsed various sums as credits, amounting in the aggregate to $960.95. They sold a considerable portion of the fertilizers to farmers. They took notes for a part of the purchase money, and delivered them to plaintiff to hold as collaterals. Plaintiff insists that, according to the evidence adduced in the trial, defendants sold fertilizers for $1,130.50, and remitted to plaintiff the same except $250.72, and that they are indebted to it for that amount. On the other hand, the defendants say that, according to the evidence, they remitted to the plaintiff all the moneys collected by them for fertilizers sold, and that plaintiff is indebted to them in the sum of $150.

In the progress of the trial a number of witnesses were allowed to testify in behalf of the defendants, over the objection of plaintiff, that they had purchased fertilizers of the defendants, and paid for them, and used them, and they failed to improve their crops; and others were allowed to testify, over the objection of the plaintiff, that the fertilizers of plaintiff did not improve crops in 1907 as much as other fertilizers.

After instructing the jury as to plaintiff's liability for warranty, the court instructed them, at the request of the plaintiff, as follows:

"7.    The court further instructs the jury as a matter of law that under the terms and conditions of the contract entered into between the plaintiff and the defendant it became and was the duty of the defendants to use good judgment and exercise diligence in extending credit to purchasers ·of fertilizer, and to know that the parties to whom they sold were reasonably honorable annd responsible; it was also their duty to look diligently after the collection of all sums due for such fertilizer so sold, and they can not in this case recoup any amount as against plaintiff on account of their failure to collect any sum or sums due on notes of their customers unless they show that they did comply with their duty in these respects.

"8.    You are instructed that the claim of defendants in this case for credits on the note sued on constitutes what is known at law as a severable account, and, before the defendants will be permitted to set off any item of said account as against the claim of plaintiff herein because of the failure of the fertilizer to be reasonably fit for the use intended, they must show by a fair preponderance of the testimony that said amount has not been collected by them; that their failure to collect the same is the direct result of the failure of the fertilizer furnished them by the plaintiff to come up to the implied warranty.

"9.    You are instructed that, even though you find that the fertilizer furnished defendants by plaintiff was not reasonably fit for the purpose for which it was intended, yet if you find that defendants actually sold all the fertilizer with which they stand charged for the price for which they expected to sell it when they bought it, and if you further find that they have collected for practically all of it, you would not be warranted in allowing defendants credit for a greater amount by way of counterclaim or setoff than the amount represented by the difference between the amount actually received by them and the amount they would have received had the fertilizer been reasonably fit for the purpose intended, together with any additional amount which you may find that they were forced to expend and the reasonable value of any additional time which

they were forced to spend in handling the said fertilizer; and you would not be warranted in allowing them credit for any of these amounts unless you find from a fair preponderance of the evidence that their loss was occasioned as the direct result of the said fertilizer to be reasonably fit for the purpose for which it was intended."

And the court refused to instruct the jury at the request of the plaintiff as follows:

"16. The jury are instructed that in no case will defendants be entitled to credit on the notes sued on herein for any amount on account of any warranty, either express or implied, until they show that same was used on the character of soil for which it was intended; that it was used in a way calculated to produce good results; that the amount had not been collected, and that the failure to collect the same was wholly due to the failure of the fertilizer to measure up to the analysis.

"17. The jury are instructed that, before the defendants can claim as a setoff in this case any item represented by notes of their customers, they must show that they have used due diligence to collect the same; that they have endeavored to collect them according to law and reduce the same to judgment, and their failure to procure judgment on such note was solely on the ground of the breach of warranty on the part of the plaintiff."

And the court instructed the jury, over the objection of the plaintiff, at the request of the defendants, as follows:

"1. Although you may believe from the evidence that the defendants did not apprise the plaintiff of the worthless condition of the fertilizer, if you find that it was worthless, this could be considered by you only in determining whether or not the fertilizer was in fact worthless; and if you find from a preponderance of the testimony that it was worthless, or that it was not reasonably fit for the purpose for which it was bought, then defendants would not be liable for its value.

"2. You are told that any settlement which might have been made between plaintiff and defendants which did not take into consideration the question of the quality of the fertilizer can only be considered by you in determining whether or not the fertilizer was worthless; and if defendants made no claim on account of the quality of the fertilizer in such settlement,

this can only be considered in determining whether the fertilizer was in fact worthless, or that by their failure to assert such claim they intended to waive the defect, if any existed, in its condition. It is for you to say from all the evidence in the case whether or not the fertilizer was reasonably fit for the purpose for which it was purchased, and whether or not the defendants did in fact waive any claim on account of its worthless condition, if you find it was worthless.

"3. The court instructs the jury that, when a manufacturer offers his goods for sale, where the opportunity of inspection is not present before the purchase, the vendee necessarily relies upon the vendor's knowledge of his own manufacture. In such cases the law implies a warranty that the article shall be merchantable and reasonably fit for the purpose for which it was intended, and for a breach of such implied warranty, the vendee may return or offer to return the goods, if they are susceptible of being returned, after he discovers their unfitness for the purpose for which they were to have been used, or he may keep the goods and, when sued for the purchase money, may plead failure of consideration or recoup the amount of damages sustained by reason of their unfitness.

"4. If the jury believe from the evidence that the unfitness of the fertilizer for the purpose for which it was to be used, if you find that it was so unfit, could not have been known to or discovered by defendants by inspection, but that such unfitness had to be demonstrated by actual use, and that such use made it impossible to return the fertilizer after its unfitness was discovered, then and in that event the defendants were not required to return it or to offer to return it.

"5. . If you find from a preponderance of the evidence that the fertilizer in question was entirely worthless for the purpose for which defendants bought it, you will find for the defendants on the question of warranty. .

"7. If you find for the defendants on their counterclaim, you will fix their damages at such sum as you may find from the evidence will fairly compensate them for the money expended in payment of freight and the profits which they would have derived from the sale of it, if any.

"9. You are told that the vendor of fertilizer, by selling a compound as a fertilizer, thereby expressly warrants that

it is capable of giving additional producing capacity to land of the character for which it was represented to be suitable."

The jury returned a verdict in favor of the defendants for $120, and the court rendered judgment accordingly, and the plaintiff appealed.

The court erred in trying the issues in the case upon the theory that the fertilizers were sold to the appellee, instead of being consigned by plaintiffs to them to sell as its agent. Upon this theory witnesses were improperly allowed to testify that they purchased a part of them and used them and they failed to improve their crops; and upon the same theory the jury were instructed at the request of appellees. According to the express terms of the written contract, the appellant "authorized the appellees to sell the fertilizers and to be sole agents for their sale in the De Queen vicinity," and the appellees "agreed to act as agents for the sale of appellant's 'White Diamond' brand of fertilizers, and, in consideration of having the exclusive agency for these fertilizers in the above-described territory, agreed to make or have made a thorough canvass of said territory for their sale at the proper time, and agreed not to undertake the sale of any other fertilizer in said territory during the period covered by the contract." In that capacity it was their duty, under their contract with appellant, to be reasonably diligent in selling the fertilizers, to exercise reasonable care and prudence in the selection of responsible purchasers, and to sell the same for their fair value or market price, upon a reasonable term of credit, or to sell for such value or price for cash; and to exercise reasonable diligence in collecting purchase money when entrusted with the collection, and to promptly account to appellant for all money and property which has or may come into their hands during and by virtue of their agency. *Wynne* v. *Schnabaum*, 78 Ark. 402; Mechem on Agency, § § 1013, 1019, 5222.

The instructions given at the request of appellees should not have been given. The jury should have been instructed according to the issues in the case.

Appellant asked the court to instruct the jury as to an account stated. But appellant had not sued on such an account, and in such cases this court has held that it is proper to refuse such instructions. *Allen-West Commission Co.* v.

*Hudgins,* 74 Ark. 468, 472; *Bagnell Tie & Timber Co.* v. *Goodrich,* 82 Ark. 547, 555. But, as the cause will be remanded, appellant can amend his complaint in the circuit court so as to allege an account stated. If it be true, as stated, that appellant and appellees settled and agreed as to the debits and credits to which each was entitled, and a balance was ascertained to be due the appellant on the appellee's note, and time for the payment of such balance was extended to a future time, then such statement of accounts would be an account stated, and could be impeached only for fraud or mistake, and appellees became liable accordingly. *Charlesworth* v. *Whitlow,* 74 Ark. 277; *Weed* v. *Dyer,* 53 Ark. 155; *Dunavant* v. *Fields,* 68 Ark. 534; *Hamilton-Brown Shoe Co.* v. *Choctaw Mercantile Co.,* 80 Ark. 438, 440; *Fletcher* v. *Whitlow,* 72 Ark. 234, 240.

Reversed and remanded for a new trial.