Drewry *v.* Sykes.

5-981                                        291 S. W. 2d 258

Opinion delivered June 11, 1956.

*Wiley W. Bean,* for appellant.

*D. B. Bartlett* and *Mark E. Woolsey,* for appellee.

Minor W. Millwee, Associate Justice.   On March 4, 1952, appellee, Ralph Sykes, entered into a written partnership agreement with appellant, L. E. Drewry, and H. K. Blackard for the operation of a coal mine located on a 40-acre tract of land in Johnson County belonging to appellee.   The partnership was known as New Spadra Coal Company and was for a period of five years un-

less earlier dissolved by agreement or by operation of law. The agreement provided that appellee would lease to the partnership the coal underlying the tract, the coal mine and buildings for a term of five years with the right of renewal for an additional five years for a royalty of twenty-five cents per ton payable on the fifteenth day of each month for all coal mined during the preceding month. In addition, certain machinery and tools belonging to appellee would become the property of the partnership.

The agreement also provided that appellee would have a 3/4 interest in the partnership and that Drewry and Blackard would each have a 1/8 interest for which they agreed to pay $3,000 each by performing labor for wages to be agreed upon. All such wages were to be applied on the payment of their respective interests until the beginning of production and thereafter only twenty-five per cent of such wages would be so applied. In addition to wages, they also agreed to apply twenty-five per cent of any profits accruing to them from the operation until the full purchase price of $3,000 each was paid to appellee.

On June 23, 1952, appellant, Harve Willis, purchased a 1/8 interest in the partnership from appellee in accordance with the terms of the agreement. On November 10, 1952, Blackard sold his 1/8 interest to Willis, giving him a 1/4 interest, Drewry a 1/8 interest and appellee a 5/8 interest in the partnership subject to payment for the respective interests in the manner provided in the original agreement.

The partnership began operations shortly after execution of the agreement in March 1952. In the summer and early fall of 1952, only a few cars of coal were produced and the appellants and Blackard had made some improvements to the mine, including the digging of a

shaft 100 feet deep and appellee had spent considerable money in defraying expenses of the operation. The partnership was operating at a loss primarily because no sale could be found for the coal, and appellee was paying all partnership bills from his private funds. On November 1, 1952, it was agreed that the appellants and Blackard would operate the mine individually, pay all operating expenses and retain all profits after payment of twenty-five cents per ton royalty to appellee. The operation was continued by appellants under this arrangement until January 2, 1953 when they turned the keys over to appellee and procured other employment. Operations ceased and the mine remained idle until August 25, 1954 when the appellants returned and resumed operations on the same individual basis as when they quit in January, 1953, except that they failed to pay any royalty to appellee for the coal they produced.

On October 18, 1954, appellee brought this suit for dissolution of the partnership and an accounting and settlement of its affairs. After a lengthy trial the chancellor made extensive findings as the basis of a decree granting the relief prayed. After crediting appellants with all labor and money paid on their interests in the partnership, the court found that Drewry still owed $406.07 and Willis $103.20 for their respective interests. The court ordered the sale of all partnership assets including all machinery and equipment originally contributed by appellee together with all additional machinery and movable buildings, including a coal tipple, which had been placed on the premises since formation of the partnership. It was further directed that net proceeds of the sale be applied as follows: First, the sum of $542.19 to creditors other than partners; second, the sum of $8,082.01 to appellee as a creditor of the partnership; and third, that if any sale proceeds remained after payment of said liabilities, then the court would make further orders for the distribution of such proceeds. The court further directed that if the sale proceeds were insufficient to pay said liabilities, then said partners should contribute to the payment of said unpaid bal-

ance according to their respective interests in the partnership.

For reversal appellants first contend: "The trial court erred in stating an account for appellee, since an account had already been stated under oath and is a part of this record." This contention is predicated on the theory that appellee's answers to certain discovery interrogatories propounded by appellants, together with the exhibits thereto, constituted an account stated between the parties. These interrogatories and answers were propounded and given pursuant to Act 335 of 1953. They were filed with the clerk but never offered in evidence. Conceding, without deciding, that such interrogatories and answers are properly before us, they do not constitute an account stated between the parties. In *Charlesworth v. Whitlow,* 74 Ark. 277, 85 S. W. 423, this court held (headnote 2): "In an account stated two things are necessary, viz: (1) that there be a mutual examination of each other's items; (2) that there be a mutual agreement as to the correctness of the allowance or disallowance of the respective claims and of the balance on final adjustment." We have also defined an account stated as an account balanced and rendered with an assent to the balance, express or implied. *Brown v. Southern Grocery Co.,* 168 Ark. 547, 271 S. W. 342, 40 A. L. R. 383. In his answers to the interrogatories, appellee did not purport to strike a balance between the parties and there was no mutual agreement as to the correctness of the matters set forth in such answers. On the contrary, much of the testimony offered by appellants was in contradiction of some of the answers made by appellee.

It is next argued that the trial court erred in holding that the mine shaft and other realty were not a part of the partnership assets; and in requiring the purchasers of said improvements to remove a concrete building, coal tipple and blacksmith shop from the premises. Although appellants disavow any claim of ownership in the realty, it is nevertheless argued that they had a 3/8 interest therein until March 4, 1962 under that provision of the partnership agreement in which appellee agreed

to lease the mine and buildings to the partnership for a renewable 5-year term. While appellants make no contention that the partnership should not have been dissolved, it is argued that the mine shaft and a lease, which was never executed, should have been ordered sold along with the other properties. The mine shaft is simply a hole in the ground which became a part of the realty, and it is difficult to understand how the court could have ordered it sold or removed. The court did hold that all movable machinery and buildings were partnership assets and ordered them sold with the right of removal.

The execution of the lease by appellee was contingent upon the operation of the partnership in accordance with the terms of the agreement which was abandoned by mutual consent of the parties after November 1, 1952. A preponderance of the evidence supports the chancellor's finding that all mining operations after November 1, 1952 were conducted by the appellants individually, and not as a partnership, pursuant to the new agreement under which they were to pay all expenses and receive all profits and pay appellee twenty-five cents per ton royalty. In doing so, appellants clearly waived any rights they might otherwise have had under this feature of the agreement.

Appellants next say: ''The Court erred in holding that Appellant Drewry must pay a balance of $406.07 into the partnership, the balance he owed on his 1/8 interest in the partnership; and that Appellant Willis owed and must pay into the partnership $103.20 as a balance due on his 1/4 interest in said partnership.'' A sufficient answer to this contention is that the court did not decree that appellants pay any amount into the partnership. There is no contention that the amounts of the unpaid balances which the court found due by appellants in payment for their respective interests are incorrect. The court did not direct that appellants pay these amounts into the partnership but decreed that if any proceeds from the sale of partnership assets remained after payment of the liabilities, then the court would make supplemental orders for the proper distribution of

such proceeds. In the event of an excess of sale proceeds over liabilities, the court will doubtless take these unpaid balances into consideration in determining the respective interests of the parties in said proceeds.

The fourth point argued by appellants is that the trial court erred in holding they were not entitled to damages for breach of the partnership contract by appellee. In this connection the court expressly found that appellants were not entitled to damages for the alleged wrongful dissolution of the partnership by appellee or alleged wrongful issuance of the temporary order restraining appellants from further operation of the mine. A great volume of testimony was introduced on this issue which we do not attempt to detail. As previously indicated, the partnership enterprise proved to be mutually unprofitable for all the parties concerned and was virtually abandoned in November 1952 when appellants proceeded to operate the mine individually for a time. This arrangement also proved unprofitable and appellants abandoned the project and procured other employment in January, 1953. When appellants returned nineteen months later they resumed operations by using the partnership equipment in mining coal and retaining the proceeds of all sales made by them without paying any royalty to appellee. There is considerable dispute as to the negotiations between the parties at this time which resulted in their failure to agree on a plan of future operation of the mines. At that time the partnership owed appellee approximately $8,000 which he had advanced to defray expenses of the partnership. Under all these circumstances, we cannot say the chancellor erred in refusing to hold there was a breach of contract on his part.

Appellants finally say that, regardless of the final disposition of the case on its merits, costs in the sum of $224.25 for that part of the record on appeal designated by appellee should be adjudged against him under Sec. 12 of Act 555 of 1953 (Ark. Stats. Sec. 27-2127.6). The statute authorizes this court to withhold or impose costs as circumstances may require for a party's infraction of the rule against the inclusion of nonessential matters

as part of the record on appeal. It further provides that no presumption shall be indulged that the findings of the trial court are supported by any matters omitted when the record has been abbreviated by agreement or without objection from opposing parties. *Griffin* v. *Young*, 225 Ark. 813, 286 S. W. 2d 486. We do not concur in appellants' contention that the record designated by appellee had no bearing on the decision of the questions presented by the appeal. It is true that appellee designated the entire record after appellants had designated only certain portions thereof, but the chancellor sustained in part appellants' motion to strike certain portions of the record designated by appellee. We cannot say that the remaining portions were not essential to the decision of the questions presented by the appeal. On the contrary, we agree with appellee's assertion that he might have found himself powerless to sustain the correctness of the chancellor's accounting and other conclusions reached if he had not designated that part of the record now challenged by appellants. See *Manila School District No. 15* v. *Sanders*, 226 Ark. 270, 289 S. W. 2d 529, where this court held that an appellee could not be heard to say that some portion of the testimony not in the record justified the trial court's rulings where he failed to designate any additional portion of an abbreviated record on appeal.

Affirmed.