## SEITZ v. MERIWETHER.

Opinion delivered April 26, 1915.

1. CHANCERY JURISDICTION—ACCOUNTS—MASTER.—Chancery courts have jurisdiction to settle and adjust long and complicated accounts, and to do so the chancellor may appoint a master, trained in the work, to examine the accounts, to take testimony in reference thereto, and to direct him to report his finding to the court. The chancellor then has authority to modify the report of the master after exceptions thereto have been made.

2. LEVEE AND DRAINAGE DISTRICTS—CONSTRUCTION OF DITCH—COMPLIANCE WITH CONTRACT.—The contractors employed to construct an improvement by a levee and drainage district, held, in the construction of a certain ditch, to have complied with the terms of the contract.

3. DRAINAGE DISTRICTS—CONSTRUCTION—COMPENSATION TO CONTRACTOR.—A contractor agreed to dig and refill a muck ditch for a certain amount. Held, where the contractor used dynamite in excavating the muck ditch, he was not entitled to anything over the contract price for refilling the same.

4. DRAINAGE DISTRICTS—COMPENSATION TO CONTRACTORS—EXTRAS.—The amount allowed the contractors for extras, by the chancellor, held not to be against the preponderance of the testimony.

5. DRAINAGE DISTRICTS—ERROR IN SURVEY—RIGHT OF CONTRACTOR.—The contractor, constructing a drainage ditch, will be entitled to compensation for earth removed, which was not provided for in the contract because of an error in the original survey.

6. DRAINAGE DISTRICTS—COMPENSATION TO ENGINEER—ERRONEOUS STATEMENT AS TO SALARIES OF ASSISTANTS.—The engineer of a drainage district turned into the district amounts due his assistants as salaries, amounts in excess of the salaries actually due, and retained the excess. *Held*, in a settlement with the district, the engineer would be charged with this excess retained by him.

7. DRAINAGE AND LEVEE DISTRICTS—COMPENSATION TO CONTRACTOR—CLEARING RIGHT-OF WAY.—The contractor for a drainage and levee district will be allowed compensation for clearing a right-of-way, when the work was done with the knowledge of the engineer, and when the district reaped the benefit of the work done.

Appeal from Greene Chancery Court; *Charles D. Frierson,* Judge; modified and affirmed.

*Spence & Dudley, R. E. L. Johnson* and *Burr, Stewart & Burr,* for appellants.

1. The court had no jurisdiction to adjust the accounts; that was a matter for the board of directors of the district. 5 Pom. Eq. Jur., § § 342, 346. The board of directors are not shown to have been guilty of any illegal, wrongful or dishonest official acts. No fraud is shown. 106 Ark. 310. There was no misappropriation of funds or illegal payments. 114 Ark. 289.

2. Ancillary or alternative relief in equity can not be granted unless the bill states an equitable cause of action and is established by the proof. The allegations of the complaint are not true. 168 Fed. 756; 16 Cyc. 111; 37 Ark. 164; 105 U. S. 430; 1 Ark. 31; 83 *Id.* 554.

3. The contractors should have been allowed for refilling the muck ditch. This is a question of law, as the facts are undisputed.

4. The court erred in its allowances for clearing right-of-way, and for fill and excavation.

5. Interest should have been allowed.

6. Clerical errors were made in the reports, which should be corrected. 47 Ark. 317, 320. One can not ratify and yet repudiate the same transaction in one breath.

7. Mitchell had the right to employ assistants and make the settlements as he did under the arrangement made with the board. His accounts were filed with the board for more than five years and were allowed without question. The board and district are now estopped from questioning the allowances and the master erred in charging these various amounts as overcharges.

8. The master erred in disallowing Mitchell's claims for superintendency, instrument hire, etc.

*M. P. Huddleston, D. G. Beauchamp* and *Block & Kirsch,* for appellees.

1. The jurisdiction was settled on the first appeal. 169 S. W. 1175.

2. The chancellor's construction as to the refill of muck ditch was correct.

3. The finding as to right-of-way was supported by the evidence and was properly sustained by the chancellor.

4. The claim for extra yardage was properly disallowed. The work had not been allowed by the engineer, nor had a bill been presented to the board.

5. Interest was properly refused.

6. It was the duty of the board to withhold 15 per cent of the engineer's estimates. The board had no powers nor duties except those expressly conferred by the statute. Acts 1905, p. 442; 114 Ark. 289; 94 Ark. 380; 93 *Id.* 491.

7. An engineer has no authority to change the terms of a contract. 100 Ark. 166. Nor can the board do so where the contract is let to the lowest bidder as required by statute. 93 N. W. 911; 97 *Id.* 420; 75 N. Y. 65; 43 N. E. 216; 135 Ala. 187.

8. On the whole case the decree should be sustained except as to errors in refusing to order the contractors charged up with interest, etc., and in allowing compensation for the muck ditch, as to which items the decree should be reversed and an accounting ordered.

HART, J.    By special Act No. 172, passed by the General Assembly of 1905, a levee and drainage district to be composed of certain designated territory in Clay and Greene Counties, was established. See Acts of 1905, page 429.

The directors were appointed and the district was duly established in accordance with the terms of the act. The directors then proceeded with the construction of the improvement.

In June, 1912, two of the directors of the district and certain taxpayers within the district instituted a suit in chancery court against the remaining directors and against A. V. Wills & Son, with whom a contract had been made for the construction of the improvement, and J. D. Mitchell, who had been elected engineer for the district.

In the complaint it was alleged that the contractors were making overcharges and were being paid in excess of the contract price. It was also alleged that the contractors and the engineer had been guilty of fraud in certain respects. The court ordered a reference to a special master of the accounts between the district and the contractors, and of the accounts between the district and the engineer. The special master was instructed to report in accordance with directions given him. An appeal was taken to this court and an opinion was handed down on all matters pertaining to the decree which we held to be final and appealable. The court, however, held that the decree against the contractors and the engineer for an accounting was not final and could not be reviewed by us because the report of the master had not then come in and the finding of the chancery court was not for any definite amount against the contractors and the engineer. Therefore, the appeal of the engineer and of the contractors as to the state of accounts between them respectively and the board of directors was dismissed as being premature. See *Seitz* v. *Meriwether,* 114 Ark. 289, 169 S. W. 1175.

Upon a remand of the case and the coming in of the report of the special master, the chancellor found that the contractors, A. V. Wills & Son, were indebted to the district in the sum of $4,634.32; and that J. D. Mitchell, the engineer, was indebted to the district in the sum of $1,435.13. A decree was entered accordingly, and to reverse that decree, the contractors and the engineer have prosecuted this appeal.

It is first insisted by counsel for the defendants that the court had no jurisdiction to adjust the accounts between the district and the contractors and the engineer. This question was decided adversely to their contention on the former appeal, which is the law of the case. Moreover, we are of the opinion that our decision on the appeal in this respect was correct. It appears from the record that the board of directors elected J. D. Mitchell as engineer for the district and made a contract with A. V. Wills & Son for the construction of the improvement provided for in the statute. The contractors proceeded with the construction work and had been so engaged for several years before the suit against them was instituted. Thus it will be seen that the accounts ran over a period of several years. They consisted of numerous items. Mistakes are alleged in the accounts on both sides. Many of the vouchers for the payment of the contractors have been lost. A great many of the monthly estimates prepared by the engineer were also lost. All these matters are to be considered in the adjustment of the accounts.

(1) In such cases the chancellor has power to appoint a master trained in the work to examine the accounts, to take testimony in reference thereto, and to direct him to report his finding to the court. The chancellor then has authority to consider and modify the report of the master after exceptions thereto have been made. All these are cogent reasons why the accounts could be better settled by the machinery of a court of equity than by a jury. The jurisdiction of a court of chancery to settle and adjust long and complicated ac-

counts such as appear from the record in this case is well established by former decisions of this court. *Trapnall v. Hill*, 31 Ark. 345; *Smith v. Stack*, 89 Ark. 143; *Bagnell Tie & Timber Co. v. Goodrich*, 82 Ark. 547; *Goodrum v. Merchants & Planters Bank*, 102 Ark. 326.

It is insisted by counsel for the contractors that the court erred in not allowing them payment for the refilling of the muck ditch. The muck ditch was an excavation "not to exceed in depth eighteen inches and in width three feet," to be dug as designated by the engineer. The contract contemplated that it should be dug along the center line of the base of the levee and provided that "a muck ditch not to exceed in depth eighteen inches and to exceed in width three feet shall be dug as designated by the engineer; such muck ditch shall be filled with earth free from perishable materials as may be taken with a dredge boat dipper. Stump holes and others that may be necessary in preparation work shall be filled and compacted as prescribed for muck ditch."

The contract also provides that "The contractor agrees to accept the following prices as full compensation for the completion of the work specified or implied in this contract, namely, the sum of $3.50 per rod for muck ditch."

In preparation for the construction work the contractors first cleared the right-of-way by cutting down the trees on it. They used dynamite in blowing out the stumps and for a part of the way the blowing out of the stumps formed a ditch along the right-of-way, although the ditch was not constructed in a straight line as contemplated in the contract. Where the stumps were not close enough together to form a continuous ditch the earth between the stumps was blown out in order to form a ditch.

The contractors testified that it would have been cheaper for them to have dug out the stumps but that they blew them out with dynamite in order that they might clear the right-of-way of obstructions and construct the muck ditch at the same time.

(2) The chancellor found that in doing this they practically constructed the muck ditch along the whole line of the levee and that their work in this respect was a substantial compliance with the contract. Much testimony was taken on both sides, and after a careful consideration of it we do not deem it necessary to set out the testimony in detail, but think it sufficient to say that the finding of the chancellor to the effect that the contractors constructed a muck ditch in substantial compliance with the terms of the contract should be upheld.

(3) It is contended by counsel for the defendants that the contractors are entitled to payment for refilling the muck ditch, and this is the principal item of contention between the contractors and the board of directors of the levee district. We do not agree with counsel in this contention. We have set forth above the terms of the contract on this question. After setting forth the dimensions of the ditch, the contract provides that it shall be filled with earth free from perishable material; and another clause provides that the contractor is to receive $3.50 per rod for the muck ditch. Thus it will be seen that the contract itself provides that the muck ditch shall be dug and refilled for the sum of $3.50 per rod, and this was all that the contractors were entitled to receive for that work.

The testimony on the part of the contractors tends to show that in blowing out the stumps and preparing the muck ditch, all of the excavated dirt was blown away from the right-of-way and could not be used in filling the ditch. Therefore, they contend, they should be allowed to charge for refilling the muck ditch.

In the first place, it may be said that the contractors chose their own method of constructing the muck ditch, and the fact that they chose a method by means of which the excavated dirt was blown away from the right-of-way of the levee does not offer any reason why they should be paid again for refilling the muck ditch. They chose their own way of construcing the muck ditch, and, as we have already seen, it was provided by the terms of the contract

itself that they should receive $3.50 per rod for the construction of the muck ditch, and this included the refilling of it.

The amount of dirt necessary to refill the muck ditch was 16,142 cubic yards, which, at the contract price of sixteen cents per cubic yard, amounted to $2,582.72, making, with $390.34 interest, a total of $2,973.06. The chancellor correctly decided that the contractors were not entitled to this amount. Therefore, the master in his original report, for convenience, added this to the total payments reported received by the contractors, thinking that the contractors already had been given credit for the whole of the 16,142 cubic yards necessary to refill the muck ditch. It turned out that it had been given no credit for 12,242 cubic yards which, at the contract price, would amount to $1,958.62. So the master corrected his report so as to give the contractors credit for this amount. They had received credit for the remaining 3,900 cubic yards, which at the contract price of sixteen cents per cubic yard amounted to $624.10 principal and $94.29 interest, or a total of $718.39, which the master finally properly charged the contractors with on account of the muck ditch.

(4) It is also contended by counsel for the contractors that the court erred in its allowance to them for clearing something more than thirty-five acres of additional right-of-way for the big slough ditch. It is conceded that this comes under the head of extra work which was to be paid for at the actual reasonable cost plus 15 per cent. The master allowed the contractors $35 per acre for this work. This, with the 15 per cent, was the amount approved by the court and allowed the contractors.

It is contended by the contractors that the reasonable cost of clearing this land was $45 per acre, which, with the 15 per cent added, would amount to nearly $50. They contend that the court should have allowed them this amount. The testimony is somewhat conflicting on this point, but after a careful consideration of it we are in-

clined to think the chancellor was right in the amount allowed the contractors; at least it may be said that his finding in that respect is not against the preponderance of the evidence.

It is next contended by counsel for the defendants that the court erred in not allowing them an item of $1,750 for throwing dirt on one side of the ditch between certain stations. The master disallowed this claim and the court approved his action. Under the terms of the contract the engineer had the right to order the dirt to be put on one side between these stations. It is not contended that his action in making the order was arbitrary. The contractors at the time recognized the right of the engineer to make the order and did not make any additional claim on that account at that time. We think the court properly disallowed this claim.

(5) It is next insisted that the court erred in disallowing a credit for $1,227.78. This claim is made by the contractors because of error in estimating the amount of yardage when the first survey was made between stations numbered 260 and 244. They claim 7,673.6 cubic yards, for which they were entitled to pay at sixteen cents per cubic yard. The master disallowed this claim because that work had been done something over two years before the suit was filed and because the contractors had not theretofore made any claim for it.

The contractors claimed that the reason they did not put in a claim for this yardage sooner was because of an error in the survey which they had not discovered. They testified that when the survey was first made the rod was put down on the levee and rested on the top of some smart weeds and flags and did not go down into the earth and that this mistake caused them to get pay for a less amount of yardage than they actually moved. They said that afterward they knew that they were moving more earth than they were getting pay for, and a resurvey was made, the rod being placed down to the bottom of the levee as it should have been, and the amount now claimed by them

is the additional amount which should have been paid them at that time.

We think the chancellor erred in not allowing this claim. This is upon the principle that whoever demands equity should do equity. This rule applies to one party as well as to the other, and it would be as unjust to allow the board of directors or taxpayers to avail themselves of the mistakes against the contractors and to exact a strict settlement in other respects as it would be to allow the contractors to claim excessive credits. See *Trimble* v. *James,* 40 Ark. 407; *Dyer* v. *Jacoway,* 50 Ark. 217; *McLeod* v. *Griffis,* 51 Ark. 14.

(6) As to the state of the accounts between the board of directors and the engineer, but little need be said. Mitchell was elected engineer for the district by the board of directors, and as such engineer had the authority to appoint assistants. He appointed a number of assistant engineers and agreed to pay and did pay them certain stated salaries. He turned in their salaries to the board of directors at a greater amount than he paid them and retained the excess. The court properly charged him with the difference between what he actually paid his assistants and the amount for which he took credit from the board, and this constitutes the basis of the judgment against him.

It follows that the decree against him must be affirmed.

In the adjustment of the accounts between the contractors and the board of directors it may be said that the chancellor and the special master not only made a careful and patient examination of the accounts themselves, but in addition took much testimony in order to ascertain their correctness.

We have in turn made a careful and patient examination of the record, and, except as to the item of $1,-227.78, think the finding of the chancellor on the various items was not against the preponderance of the evidence.

The record does not disclose at exactly what time the work was done for which the credit of $1,227.78 was

allowed, except that it shows that it was done more than two years before the filing of the report of the master. Therefore, the contractors will be entitled to 6 per cent interest on this amount for two years, and this amounts to $147.33, making a total amount of $1,375.11.

The chancellor found that $4,634.32 was due by the contractors to the district. After deducting the above claim, there will be due the district $3,259.20, and the decree for that amount will be affirmed.

### ON REHEARING.

HART, J. (7) After due consideration of the petition of the appellants for rehearing, we have concluded that the contractors should be allowed $344.35 additional for clearing right-of-way. It is true the engineer testified that he did not order this additional right-of-way cleared, and Wills testified that he did not remember whether or not the engineer ordered him to clear it. Wills does say, however, that this additional right-of-way was cut with the knowledge of both the engineer and his assistant, who was on the ground when the work was done. He further stated that it was the understanding at the time that the levee would have to be extended over this ground and this was subsequently done. So it will be seen that the additional clearing was actually done by the contractors and that the levee district reaped the benefit of their labor. Under these circumstances it would be inequitable not to allow the amount; and it is ordered that the sum of $344.35 be deducted from the judgment against the contractors.

Counsel for appellants also insist that the contractors should be allowed other additional claims for excavation, namely: Stations 950-955, Plum Thickett, 1,542.5 cubic yards, at 16 cents, $246.80; Stations 1155-1170, Tuttle's Ridge, 8,152.15 cubic yards, at 16 cents, $1,304.34; and Stations 1198-1214, Hog Donec, 6,371.92 cubic yards, at 16 cents, $1,019.50.

These three claims originated in the requirement of the levee inspector that the contractors dig the borrow

pit of the levee four and one-half feet deeper at the three points above mentioned. The engineer required this to be done in order to bring the borrow pit of the levee to grade to serve the purpose of a drainage ditch. The contract provided that the work should be constructed by a flowing dredge, etc., so as to leave good drainage for the lands adjacent. The engineer construed this clause of the contract to mean that the borrow pit should be so constructed as to act as a drainage ditch for the adjacent lands, and, on that account, ordered the contractor to dig the borrow pit four and one-half feet deeper at the points mentioned.

This work was done nearly four years before suit was instituted and the contractor never put in any claim for the work until some time after he had filed his answer to the present suit. It is evident then that he acquiesced in the construction placed upon this clause of the contract by the engineer, and we are of the opinion that the chancellor correctly denied the claims now asked for by him.

The petition for rehearing as to these three claims will be denied.